JOHN P. WESTBERG, Respondent, *vs.* THE CITY OF KANSAS, Appellant. ·

1. *Mayor—Marshal—Appointment of officer—Commission of—Evidence of what.*—Where a city ordinance authorizes the appointment of an officer by the mayor and marshal, his commission, signed by the mayor, is presumptive evidence of the concurrence of the marshal in his appointment.

2. *Municipality—Police officer—Removal of by Mayor—Claim for subsequent salary—Vested rights—Contract, etc.*—In suit by a policeman against the City of Kansas, for suspending and dismissing him from employment, and for the remainder of his salary thereafter unpaid, it appeared that, by its charter, the common council had power by ordinance (not to appoint but) to provide for the appointment of police officers ; that the mayor was authorized to suspend, and, with the consent of the common council, to remove any officer, etc. On receipt of a communication from the ,mayor suspending an officer, the only action required of the council was to file the same. The records of the council showed that plaintiff was nominated as police officer by the mayor and confirmed by the city council ; that a message was afterward received from him suspending plaintiff from his office on the police force, and recommending his removal therefrom for the unnecessary shooting of A. B. On the message was endorsed "received and action of the mayor confirmed." , " D. G., Clerk."

*Held,* that the manifest intent of the mayor was to permanently remove the officer, and that the approval of the city council, through its clerk, had reference to such purpose and not merely to a suspension from office ; but even were the plaintiff only suspended from office, that he was not entitled—as against the city—to recover a salary during the period for which he was suspended, since plaintiff had no vested right in his office ; nor had he had any contract with the city for his position, and if he had, the city had a right to sever it for misconduct.

*Appeal from Jackson County Circuit Court.*

*J. Brumback,* for Appellant, cited : Philadelphia vs. Given, 60 Penn. St. 140 ; High Ex. Rem. § 70 ; Chart. Kas. City, art. 4, §§ 7, 22 ; Dill. Mun. Corp. [1 ed.], § 188 and cases cited ; *Ex parte* Hennen, 13 Pet. 230 ; 9 Wis. 258, 259 ; Primm vs. Carondelet, 23 Mo. 22 ; State vs. Davis, 44 Mo. 129 ; State vs. Lingo, 26 Mo. 498, 499 ; Moore vs. Wingate, 53 Mo. 405 ; State vs. Common Council, 9 Wis. 263 ; *Ex parte* Hennen, 13 Pet. 259, 260 ; Holbrook vs. Trustees, 22 Ill. 539 ; Bowerbank vs. Morris, Wall. C. C. R. 124 ; U. S. vs. Bank Arkansas, Hempst. C. C. 460 ; State vs. Clark, 52 Mo. 513 ; Auditor vs. Benoist, 20 Mich. 176 ; Smith vs. The Mayor, 37 N. Y. 518 ;

Kiley vs. Cranor, 51 Mo. 543 ; Dill. Mun. Corp. §§ 233–237, and cases cited ; Wright vs. Jacobs, 61 Mo. 23.

*White & Titus*, for Respondent, cited : Dill. Mun. Corp. [1 ed.], §§ 151, 174, 751 ; Stadler vs. Detroit, 13 Mich. 346 ; Shaw vs. Mayor, etc., of Macon, 19 Ga. 468 ; Same case, 21 Ga. 280 ; Mayor, etc., of Macon vs. Shaw, 25 Ga. 590 ; Carroll vs. Siebenthaler, 37 Cal. 193 ; Western Savings Fund Society vs. Philadelphia, 31 Penn. St. 175, 185 ; Nearns vs. Harbert, 25 Mo. 353 ; Mooney vs. Kennett, 19 Mo. 555 ; State vs. Oddle, 42 Mo. 214 ; Clarke vs. Dutcher, 9 Cow. 651 ; Mowatt vs. Wright, 1 Wend. 360, 364 ; Supervisors, etc., vs. Briggs. 2 Hill N. Y. 135 ; Same vs. Same, 2 Denio 39–41 ; Snelson vs. State, 16 Ind. 29, 31–33 ; Nelson vs. Milford, 7 Pick. 26, 27 ; The President, etc., of Bank of United States vs. Dandridge, 12 Wheat. 70, 73 ; Proprietors of Canal Bridge vs. Gordon, 1 Pick. 304, 307 ; The United States vs. LeBaron, 19 How. 78, 79 ; State *ex rel.* vs. Common Council of Jersey City, 1 Dutch. 530, 544 ; Dill. Mun. Corp. 218, § 183 ; State *ex rel.* Bryson vs. Lingo, 26 Mo. 496 ; Commonwealth vs. The President, etc., of St. Patrick's Society, 2 Binney, 441, 450 ; State *ex rel.* vs. Bryce, 7 Ohio, 414, 416 ; State *ex rel.* vs. Chamber of Commerce of Milwaukee, 20 Wis. 63, 71 ; Commonwealth vs. Sutherland, 3 Serg. & R. 145 ; State vs. Trustees of Vincennes University, 5 Ind. 89, 90 ; City of Madison vs. Korbly, 32 Ind. 74 ; Chart. City of Kans. [1870], p. 337, art. 4, § 7 ; Ib. p. 336, art. 3, § 36 ; Rev. Ord. City, c. 23, § 1 ; Dill. Mun. Corp. [1 ed.], §§ 188, 191 ; Rex vs. Richardson, 1 Burrows, 537, *et seq.* ; Dill. Mun. Corp. p. 228, note 3 ; Caulfield vs. State, 1 S. Car. 461 ; Western Saving Fund, etc., vs. Philadelphia, 31 Pa. 175, 185 ; Cameron vs. School District No. 2, 42 Vt. 507 ; Supervisors of Niagara vs. The People, 7 Hill, 511 ; City of Covington vs. Ludlow, 1 Metc. [Ky.] 295.

HENRY, Judge, delivered the opinion of the court.

On March 19, 1872, Westberg sued the City of Kansas for $900.

The petition states that on or about May 2, 1871, the city, through its proper officers, employed, and duly appointed and confirmed Westberg, the respondent, in the capacity of policeman of the city, and the mayor and clerk of the city gave him a certificate, or commission, showing his employment as policeman for one year; that the city agreed to pay him $75 per month for his services; that he entered upon the discharge of his duty and continued therein "until on or about the fifteenth day of May, A. D. 1871, when he was suspended by defendant from said employment, without provocation or cause, and remained so suspended from his duties aforesaid for several days; that plaintiff, after the said fifteenth day of May, A. D., 1871, offered to continue in and perform all the duties of policeman aforesaid for said defendant, but defendant wrongfully, and without cause, prevented plaintiff from fulfilling his said contract of employment, *by dismissing him*, and refusing to pay him for his services aforesaid."

Prayer for judgment for $900.

The city filed an amended answer February 1, 1873, alleging: that the mayor and city clerk of the city issued to Westberg the certificate, or commission, mentioned in the petition, dated May 3, 1871 (giving a copy thereof); that the city did not, through its proper officers, employ, duly appoint or confirm him in the capacity of policeman; that he was not appointed as policeman otherwise than by being appointed by the mayor of defendant, and such appointment being confirmed by the common council of the city, by vote or resolution; that "he was not appointed by ordinance, nor pursuant or according to any ordinance;" that under color of the appointment mentioned in the answer, and without any other right, plaintiff acted and served as policeman from May 3, 1871, to May 15, 1871, and for such service the city paid, and he received, $30 in full; that the city did not agree to pay him $75 per month, or anything whatever; that after he was appointed policeman, as disclosed in the answer, and not otherwise, and received his commission, and on May 15, 1871, the mayor of the city, for good cause, suspended, and, by and with the consent of defendant, removed him from his office

and employment; that the city did not wrongfully and without cause prevent him from fulfilling his alleged contract of employment, nor wrongfully and without cause dismiss him and refuse to pay him for his services.

On motion of plaintiff the court struck out of this answer the words, "by ordinance." The city excepted to this.

Plaintiff replied to this answer, denying the allegations of new matter, except the payment of the $30.

The issues thus joined were tried by the court without a jury, May 24, 1875, and judgment rendered against the city for $1,078. The city the same day filed a motion for a new trial, which the court at the same term, on May 27, 1875, overruled. At the same term, and on June 5, 1875, the city tendered its bill of exceptions, which was allowed, when it filed an affidavit and gave bond and appealed.

The bill of exceptions discloses all the testimony on the trial.

Plaintiff read in evidence an ordinance of the city, approved May 2, 1871 : To create, regulate and establish the police of the city, and to prescribe their duties and powers. The first section is as follows : "Sec. 1. The police of the city of Kansas is hereby created, which shall consist of 24 policemen and 2 sergeants. They shall be appointed by the mayor and marshal, subject to the confirmation of the common council in the same manner as other appointive city officers." Section 2 defined their duties. Section 3 fixed their pay at $75 per month.

Plaintiff read in evidence his commission mentioned in the pleadings. He also read from the record of proceedings of the common council of the city the following entry : "May 2, 1871. The following nominations for policeman confirmed : John C. Besher, John P. Westberg."

Thomas M. Speers, a witness for respondent, testified that he was city marshal of the city in 1871, and had charge of the police ; that in May, 1871, Westberg was suspended, and he did not put him on duty after that ; "that another man served in his place afterward, the balance of the year, and commenced at first meeting of the common council after plaintiff ceased to perform duty."

Respondent also read in evidence an ordinance passed June 25, 1869, providing for the trial and removal from office of city officers in certain cases. This ordinance provided, sec. 1: "That in all cases where any city officer of the City of Kansas, other than the mayor and council of said city, and those officers who are appointed by the mayor and council, shall be guilty of probable omission of duty   *   *   or of malfeasance,   *   *   or of any misdemeanor,   *   *   such officer shall be subject to trial and removal from office *by the common council* as hereinafter provided."

Section 2 provided for charges in writing, notice to the party complained of, a trial before the common council, and in case of conviction, judgment of removal from office, &c. ; but that " no judgment or sentence of conviction, and removal from office, shall be given against any officer at any trial without the concurrence of two-thirds of the council present and acting." The other two sections refer to, and regulate, details of the proceedings.

The city, at the time, objected to the reading of this ordinance of June 25, 1869, in evidence, because : 1, the law under which the ordinance was passed had been repealed in 1870 ; 2, the ordinance was invalid, because not supported or upheld by any law in force in 1871 ; 3, the law did not apply to the suspension or removal from office of policemen ; 4, the ordinance was immaterial and irrelevant, and had been repealed by the charter of the city of March 16, 1870.

The court overruled the objections and received the ordinance in evidence, and the city excepted.

John C. Besher, a witness for plaintiff, testified that he knew Westberg in 1871 ; that he was notified by the marshal that he was suspended ; that he reported for duty several times afterward ; that "I (witness) never knew of his removal." This was all the proof for respondent.

The testimony for the city consisted of several documents and the statements of two witnesses : Danied Geary, city clerk in 1871, and A. Mayer, city clerk in 1875. The documentary proofs were :

32—VOL. LXIV.

1. A message from the mayor of the city to the common council of the city, viz:

"MAYOR'S OFFICE, Kansas City, Mo., 15th May, 1871.
To the Honorable Common Council,

Gentlemen: I have this day suspended from duty the following policemen, to-wit: John P. Westberg and John C. Besher. I would recommend their removal from the police force upon the following charges, to-wit: The unnecessary shooting of Michael Jones on the night of the 12th instant. I herewith enclose the statement of Michael Jones as to the manner of said shooting. Under all the circumstances of the case, as I learn them, these policemen were guilty of a flagrant disregard of duty and the protection of the citizens.

"I am, respectfully,

"WILLIAM WARNER, Mayor."

2. An indorsement on this message made by Daniel Geary, the city clerk, viz:

"May 15, 1871: Received, and action of mayor confirmed.

"D. GEARY, C. C."

3. A part of the record of the proceedings of the common council of the city, of May 15, 1871, viz:

"May 15, 1871.

"A message was received from his Honor, the mayor, suspending policemen Westberg and Besher, for unnecessarily shooting one Michael Jones. On motion, his action in that respect was confirmed."

The defendant introduced as a witness Daniel Geary, who testified that he was city clerk in 1871, and that certain amendments of the records of the common council, made April 27, 1875, showing that plaintiff was removed from office in 1871, were proper, and that the records made in 1871 were incorrect in not showing that plaintiff was removed. These amendments were made by witness, A. Mayer, city clerk in 1875, and the common council.

Plaintiff asked, and the court gave, two instructions. The first is to the effect that if the plaintiff was not removed from office, but only suspended, he was entitled to recover the amount

of his salary, unpaid, with interest from May 2, 1872. The second is to the effect that if on May 15, 1871, the common council intended to remove, but such intention was not expressed by the common council and mayor, and notice of the same was not conveyed to plaintiff during his term, there was no removal.

To the giving of these instructions defendant objected and excepted.

The defendant asked the following :

1. "If the court finds that the mayor of defendant suspended and, with the consent of the common council of defendant, removed plaintiff from the office of policeman, May 15, 1871, then the finding must be for defendant." (Given.)

2. "The message of the mayor, and the record of the proceedings of the common council, in evidence, show the removal of plaintiff from the office of policeman on May 15, 1871." (Refused.)

3. "The mayor, with the consent of the common council, could remove plaintiff, and without cause shown, or a trial or investigation." (Given.)

4. "On the pleadings and proofs the court must find for defendant." (Refused.)

The city duly excepted to the refusal to give instructions two and four.

Defendant filed a motion for a new trial, in due time, which was by the court overruled, and judgment was thereupon rendered for plaintiff, in accordance with the finding of the court, from which defendant has appealed.

Plaintiff's commission, read in evidence, was signed by the mayor of the city and recites that "plaintiff, on the 2nd day of May, 1871, was duly appointed and confirmed as policeman of said city," and although the ordinance provides for the appointment of policemen by the mayor and marshal, with the consent of the council, in the absence of any evidence to the contrary, the commission is sufficient evidence that the appointment was with the marshal's concurrence. Besides, as late as 1875, the records of the common council were so amended by the common council, as to make it appear that the plaintiff was *removed from*

*office*, and this is an admission by defendant that plaintiff was in office before that order was made.

The defendant contends that the charter of the city required the appointment to be made by ordinance. The 36th subdivision of art. 3, in connection with the first clause of the section, confers power upon the common council, by ordinance, *to provide for the appointment*, and not as the counsel insists *to appoint by ordinance*, and this answers the point made by him on the action of the court in striking from the answer the words " by ordinance."

It appears then that plaintiff was duly appointed policeman, but the defendant insists that he was duly removed. Plaintiff contends that he was not removed, but there is no controversy as to his suspension, or that he was legally suspended.

The 7th section of the act of 1870, amending and revising the city charter of the city of Kansas (Adj. Sess. Acts 1870, p. 333), authorizes the mayor to suspend, and with the consent of the common council to remove, any officer not elected by the people; and as the ordinance passed June 25, 1869, specifying on what grounds and in what manner such officers may be removed, is in conflict with the power conferred upon the mayor by sec. 7 of the amended charter, it was repealed by the adoption of that amended charter.

Sec. 2, art. 14 of that charter, continues in force all ordinances, regulations and resolutions, not inconsistent with the provisions of that act, and, by implication, repeals all that are in conflict with its provisions.

Was the plaintiff removed from office? In considering this question we shall disregard the testimony of Geary, who was clerk of the council in 1871, and the amendments of the record of the council.

The admissibility of that evidence was, to say the least of it, very questionable, and if it were a question to be determined by the weight of testimony, the record clearly showing one state of facts, and the evidence of the clerk, taken four years after, a different and contradictory statement, the court might very properly

have regarded the testimony of the witness as insufficient to overcome the record made by him in 1871.

Whether plaintiff was removed from office must be determined, then, from the mayor's official communication to the board, and the action of the board on receipt of that communication and such other cotemporaneous acts as throw light on the subject.

The action of the mayor, in suspending an officer, did not require the consent of the board. All the board had to do, on receipt of a communication from him suspending an officer from duty, was to file the same, and, if they thought proper, provide by resolution or otherwise for the employment of some other person to discharge the duties of the suspended officer.

What is meant by the official communication sent by the mayor to the common council, on the 15th of May, 1871, informing them that he had suspended the plaintiff and recommending his removal, upon a charge, which, if true, required his immediate dismissal from office?

We are not to expect the greatest exactness in the language employed by such officers, but to give it a liberal and reasonable construction, and ascertain, if possible, from the language employed what was, and then give effect to, the intention. It is evident that the mayor thought that plaintiff should be removed from office immediately.

The charge he makes against the officer is one of a heinous character, and the best interests of the community demanded his instant removal if it was true. The mayor knew that while he could suspend he could not remove plaintiff from office, without the concurrence of the council, and he therefore immediately suspends him, and removes him if the council shall consent. Did the council so understand that communication? Their action is thus expressed: "Received; and action of the mayor confirmed."

Why approve of what the mayor had done, if he had only suspended plaintiff? It did not require their consent or approval, for the moment they received that communication plaintiff was suspended, and all the common council had to do in the premises was, if they thought it necessary, to provide for employing another to perform the duties of policeman in plaintiff's stead.

He was not suspended for any definite period, and this strengthens our view of the transaction, and shows that the mayor expected immediate action on his recommendation of the removal of plaintiff. The mayor evidently thought that he should be instantly dismissed from the service. We think that the action of the common council had reference exclusively to that recommendation.

Neither the language of the record nor that of the mayor is as explicit as it should be, but if strictly and technically judged, there are but few proceedings of such nature that would be upheld by the courts. But supposing there was no removal from office, it is not controverted that he was suspended or that the suspension was legal. Can one *legally suspended* from office, who has not performed the service, recover the salary?

In Smith vs. Mayor of New York, (37 N. Y., 518) it was held that no claim could be brought for salary or perquisites against a municipal corporation, covering any period when the claimant was not actually in office, and the court so held on the ground that salary and perquisites are the reward of express or implied services, and, therefore, cannot belong to one who could not lawfully perform those services, although wrongfully hindered from occupying a position in which he might render them. We are not asked, nor do we propose, to announce a doctrine as broad as that in this case. Plaintiff here was not wrongly, but rightfully, hindered from performing the service, and his own gross misconduct led to his suspension. There was no contract relation between the city and the plaintiff, and if there had been, his misconduct would have justified the city in severing it. If one engage with another for a year's service, and prove unfit for it, the employer has a right to discharge him, without subjecting himself to a suit for the whole year's wages; and surely a municipal government, instituted by the people for their safety and protection, has the right to dismiss from its service an officer who abuses his trust, and so conducts himself as to be as much feared by the people as are those against whom he is selected to protect them.

The same doctrine announced in the case of Smith vs. The Mayor of New York was held by the Supreme Court of Michigan,

in the case of the Auditor of Wayne County vs. Benoist, 20 Mich. 176.

Primm vs. Carondelet (23 Mo. 32) involved the right of the city of Carondelet to repeal her ordinance, authorizing the appointment of city counsellor, and to discharge herself from any liability to the plaintiff for the salary he claimed for the two last quarters of the year 1853 for which he was appointed.

Ryland, J., said:

· "The transaction between the City of Carondelet and the plaintiff cannot be viewed as a contract. The plaintiff was not bound by any terms to hold his office or situation of city counsellor for any length of time."

Again he says: "When the office was abolished nineteen days of a quarter had expired. For this sum he is entitled to recover, but for nothing after the office has been destroyed. Defendant had no vested right to the office, and he can claim no salary after the office has ceased to exist."

In State *ex rel.* Att'y Gen'l vs. Davis, (44 Mo. 131) Wagner J., said: "But the whole doctrine, upon which the case for plaintiff is placed, is without support. It proceeds upon the theory that a person in possession of a public office, created by the legislature, has a vested interest, a private right of property in it. This is not true of offices of this description in this country. They are held neither by grant nor contract."

After a tolerably extensive examination of cases, we have failed to find one where an officer, legally suspended from office, was permitted to recover for services, which he did not, and had no right to, render.

If a legally suspended officer can, notwithstanding his suspension, recover his salary, a suspension is to be coveted by him, for he could then lie in the shade and draw compensation for labor performed by some one else. In what condition would this place incorporated towns and cities? The duties imposed upon their offices are important, and there must always be some one in place to perform them.

The law gives the corporation the right to suspend one, and this suspension is generally. for some fault of the officer, and necessitates the employment of another to perform his duties.

If compelled to pay both, the city will hesitate to exercise the right to suspend, and be tempted to keep in office unfit and unworthy men, or expel from office, to their disgrace, those whose faults do not merit so extreme a punishment. We hold, therefore, that whether removed or suspended, plaintiff was not entitled to recover the salary, or any part of it, from the date of such removal or suspension.

Judgment reversed and cause dismissed. All the judges concur.