Jones, J.,
dissenting. The question involved in this case is whether a discharged employe, who has been afterwards reinstated, can recover his salary from the city when he performed no service for the city during the time of his discharge, and where the city had employed another to take the place of the *496 discharged employe and paid his successor the salary for such services. Stated in another form, can the city be compelled to pay twice for the same services under the circumstances related ? .
'The rule in this behalf is stated by Judge Dillon in his-Municipal Corporations (5 ed.), volume 1, section 429, as follows:
“For reasons of public policy, and recognizing payment to a de facto officer while he is holding the office and discharging its duties as a defense to an action brought by the de jure officer to recover the same salary, it is held in many jurisdictions that an officer or employe who has been * * * wrongfully excluded from office, cannot recover against the city for salary during the period when his office was filled and his salary paid to another appointee.”
If any criticism could be made of the above text it is in the fact that the rule of law therein stated has in fact been upheld by practically every jurisdiction in the United States. That a de jure officer cannot recover against the city when the city has employed and paid a de facto employe has been held without reserve in all of the following states: Illinois, Connecticut, Iowa, Kansas, Kentucky, New York, Nebraska, New Hampshire, Missouri, Michigan, Washington, New Jersey, Colorado, Delaware, Oregon, South Dakota, Arizona, Louisiana, Oklahoma and Idaho. Bullis v. Chicago, 235 Ill., 472; Coughlin v. McElroy, 74 Conn., 397; Brown v. Tama County, 122 Ia., 745; Commrs. of Saline County v. Anderson, 20 Kans., 298; Walters v. Paducah, (Ky.) 123 S. W. Rep., 287; Dolan v. Mayor, 68 N. Y., 274; State, ex rel., v. Milne, 36 *497 Neb., 301; Shannon v. Portsmouth, 54 N. H., 183; Westberg v. Kansas City, 64 Mo., 493; Scott v. Crump, 106 Mich., 288; Samuels v. Town of Harrington, 43 Wash., 603; McDonald v. Newark, 58 N. J. Law, 12; Commrs. of El Paso County v. Rohde, 41 Colo., 258; Lee v. Wilmington, 1 Marv. (15 Del.), 65; Selby v. Portland, 14 Ore., 243; Fuller v. Roberts County, 9 S. Dak., 216; Mitchel v. New Orleans, 32 La. An., 1094; Shaw v. County of Pima, 2 Ariz., 399; Gorman v. Commrs. of Boise County, 1 Idaho, 655; Stearns, Mayor, v. Sims, 24 Okla., 623. Included in this list may be added our own state, which adhered to that rule in the case of Steubenville v. Culp, 38 Ohio St., 18, in the following syllabus:
“A police officer, suspended from office, by the mayor of a city, under the authority granted by sections 121 and 211 of the municipal code, is not entitled to wages during the period of such suspension, notwithstanding the council afterward declared the cause of suspension insufficient.”
And in support of the opinion in that case the learned judge cited five cases. An examination of those cases supports the emphatic rule announced in the text above, that where the de facto employe has performed the services and received the emoluments of office, the discharged de jure officer cannot recover from the public for the time that he was out of office. The contrary view has been held in a minority of states only, those states taking the view, as a rule, that public office is in the nature of a private contract and safeguarded as such by the constitution. Of the five states thus holding, Cal *498 ifornia, by a specific statute, nullified the action of its judiciary and passed a law providing in cases of similar character that double compensation should not be paid.
The court of appeals followed the minority rule, lightly dismissing the decisions, the judge delivering the opinion referring to them as “the roll call of states,” and reversed the trial court, who had made an exhaustive review of the decisions supporting the rule in the text. The court of appeals cited no authority in its support.
I am not wedded to judicial precedents that have not kept pace with our ever-changing economic life or which are incompatible with our modern system of government. If precedents are based on a weak and false logic, if they cannot be applied to our present system of government, as an equitable and just rule of action in human affairs, then they should be discarded and a new rule adopted. But judicial precedents should not be lightly disregarded, for they represent thoughtful deliberations of just and distinguished jurists whose wisdom has aided in upbuilding the social and governmental systems we now enjoy.
The rule announced in the majority opinion in this case is not only in conflict with the established law of practically every state in the Union, including our own, but is based on a new conception of vested rights in a public officer to the office — that by reason of its occupancy, by appointment or election, there subsists between such occupant and the public a contractual relation which is protected under our constitutional guarantee as an invasion *499 of private contract. This was the theory upon which the minority of states based their decisions, that the public might be required to pay a second time for services of an official wrongfully dismissed, although the services were performed by another appointed in his stead during such dismissal.
It is difficult to perceive what, public policy requires the payment by the public a second time for the same services. ' The' municipal officer whose warrant is required should not be compelled to withhold the compensation from the de facto officer for fear that at some time in the future the title to the office should be questioned. The color of authority under which the de facto officer acts is all that should be needed. Public policy requires that the duties of the officers and employes should be carried on in the interest of the public. In this instance, in the event of suspension or discharge of an employe, the city, of necessity, together with its officers, must see to it that the police and the fire departments, for instance, should be manned. If the discharged employe, as a de jure claimant, should be permitted to sue the city for .services which he had not performed, it would place the public service in inevitable embarrassment. Must the state, city or any other subdivision of the state take upon itself the risk of paying double compensation upon the adventitious circumstance that the discharged employe may thereafter hold it liable for a double compensation and for services which he has not performed? Are they bound to anticipate what the decision of the court may be in cases of *500 that character or in that multitudinous class oi cases where contests for office arise and are carried through to the courts of last resort? The municipality, in this case, should not be held responsible for an official mistake made by one of its officers in recognizing the wrong claimant. Indeed, if this rule should be followed an employe might invite suspension in order that upon reinstatement thereafter he might recover for the entire time wherr the services were performed by another, subject, only to the limitation for deduction of the reasonable amount that he might have earned meanwhile. It would not be difficult to foresee contingencies where the de pire claimant and the de facto incumbent would each be willing to permit his suit to lag, if both, on its final termination, could draw compensation from the public funds.
As it happens, in our own court there is at the present time a contest between two candidates for common pleas judge, where the inducted judge has for a long period of time received his salary, partly from the state and partly from the county. Is it possible that we shall place the stamp of approval upon a rule which would require that in the event of the induction of his rival claimant, after a -long period of contest, the claimant should again be paid by the state and county for services performed by the contestee ? An effort of that kind was made in a contest case in County Commissioners v. Rohde, 41 Colo., 258.
Under our system of government public policy does not support the theory underlying the majority opinion that an official status, by election or *501 appointment, constitutes, together with the emoluments of his office, “a contract between him and the public he serves,” nor that the constitution of Ohio guarantees him redress as in cases of private contract. It has been held in Ohio and elsewhere that the salary attached to the office is but an incident thereto and that no contractual relation exists by reason of an election or appointment, and that the same is not safeguarded by any provisions of our constitution.
In 1841, in the case of State v. McCollister, 11 Ohio, 46, 50, a dictum did creep into .the opinion that “When a man becomes an incumbent of an office, he has a vested right in that office; and all such rights are secured by the constitution.”
This dictum has been repeatedly repudiated by the courts .of this state. In the case of Knoup v. The Piqua Bank, 1 Ohio St., 603, 616, the learned judge, referring to the former dictum, said:
“He [an officer] has no property, or individual right in it. He is but a trustee for the public; and whenever the public interest requires that the office should be abolished, or the duties of the office become unnecessary, the incumbent cannot object to the abolition of the office.”
In the case of The State, ex rel., v. Hawkins, 44 Ohio St., 98, 109, which involved the action of the governor in removing the police commissioners of the city of Cincinnati, Judge Minshall. said:
“The incumbent of an office has not, under our system of government, any property in it. His right to exercise it is not based upon any contract *502 or grant. It is conferred on him as a public trust to be exercised for the benefit of the public.”
This policy was approved and followed in the case of Mason v. The State, ex rel., 58 Ohio St., 30, 55, and by the judge delivering the opinion in the later case of The State, ex rel., v. Egry, 79 Ohio St., 391, 413, the judge citing the authority of Taylor and Marshall v. Beckham, 178 U. S., 548, in its support. The latter was a case wherein the Taylor and Goebel election contest was involved in the state of Kentucky. Taylor had been given the commission as governor by the state election commissioners. Upon a contest before the legislature Taylor was ousted and Goebel inducted. In an endeavor to reach the United States court upon the jurisdictional question whether there was a deprivation of property or vested rights in the election to the office of governor, the chief justice, at page 577, said:
“The decisions are numerous to the. effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered, * * * In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.”
The case of Westberg v. City of Kansas, 64 Mo., 493, and relied upon as authority in the Ohio case of Steubenville v. Culp, supra, is very similar to the case at bar. There a policeman discharged by the mayor attempted to secure his salary ad interim by a suit against the city, upon a theory that he had *503 a vested right in his office. The supreme court of Missouri decided against such vested right.
That salary is but an incident to the office, and that neither the same nor his appointment or election thereto is contractual, is generally held by courts of this country.
Again, we must be consistent. If election or appointment constitute a contractual engagement, then the obligations and remedies must be held to be correlative and mutual. If the city could not discharge without violating a contract obligation, neither could the official or employe resign his office or employment without incurring a similar liability. And yet no one will contend that either official or employe may not resign at pleasure, and this he may do, irrespective of an acceptance of such resignation on the part of the municipality. Reiter v. The State, ex rel., 51 Ohio St., 74, 81; Ratterman v. State, 44 Ohio St., 644.
It is a little remarkable that in placing a new rule of decision upon the laws of this state, the case of Steubenville v. Culp, supra, was neither overruled nor distinguished. I have been constrained to announce this dissenting opinion because of the fact that as a member of the Fourth Circuit Court of this state we had repeatedly adhered to the rule in Steubenville v. Culp, supra, as had other circuits as well, including that of the First Circuit when it announced a similar decision in the case of The State, ex rel., v. Eshelby, 2 C. C, 468.
It may be said that a wrong has been inflicted upon an innocent de jure claimant, denying him *504 the redress sought, but the individual interest must submit to the greater interest of the public. That the claimant is not wholly remediless is announced in the cases cited by the text in 29 Cyc., 1393-4, which permits the injured party to bring an action against his successor if he has not slept meanwhile upon his legal rights.
Newman, J., concurs in- the dissenting opinion.