EDWARD F. PARKER, Plaintiff in Error *vs.* THE BOARD OF SUPERVISORS OF DAKOTA COUNTY, Defendants in Error.

ERROR TO THE DISTRICT COURT OF DAKOTA COUNTY.

The acts of an officer *de facto* are valid so far as they affect the public; and the Board of Supervisors of a county are justified in paying the salary of such an officer, where they have no notice of an adverse claim; and, whether the Board would have the right to adjudge the election of a county officer *de facto*, as null, upon the application of an officer *de jure*, for the payment of the salary of the office—*doubted.*

This action was founded upon the claim of Edward F. Parker *vs.* The Board of Supervisors of Dakota County, for his salary as District Attorney for the years 1859–60. The Board refused to allow the claim, and the Plaintiff appealed. The facts were agreed upon and submitted to the Judge of the District Court, who sustained the action of the Board and refused to allow the claim. The Plaintiff reviews here by writ of error.

Points and authorities of the Plaintiff in Error.

*First.*—The stipulation of facts show that the Plaintiff in error obtained a decision in the Supreme Court of the State of Minnesota at the July term, 1859, in his favor in the case of the *Territory of Minnesota ex rel. Edward F. Parker, vs. Seagrave Smith,* wherein said Court declared said Parker to have been District Attorney for the County of Dakota for the years 1858–59. *See decision and opinion.*

*Second.*—That the stipulation of facts show that by said decision Seagrave Smith was dismissed from said office because his election to said office for the years of 1858 and 1859 was void, and that the votes received by him for said office did not affect any of the rights of Parker, now the Plaintiff in error. *Decision and opinion.*

*Third.*—That the stipulation of facts show that the Plaintiff in error succeeded himself in said office of District Attorney in the year 1860, by virtue of an election and qualification.

*Fourth.*—That the stipulation of facts show that the Plaintiff in error acted as District Attorney whenever called upon during the years 1858 and 1859.

*Fifth.*—Smith not being an agent or assignee of the Plaintiff in error, who was *de facto* and *de jure* the District Attorney, the payment of money to him by the County for actual or supposed services rendered the County is no payment of the salary to the legal officer. *Chitty on Con.*, *p.* 643 ; *Story on Con.*, *p.* 1081, *Sec.* 978.

*Sixth.*—The salary belongs to the officer *de jure. Blackwell on Tax Title*, *pp.* 114, 115 ; *Col. Stat. of Minn.*, *p.* 165, *Section* 10.

*Seventh.*—If Smith was, as claimed, a District Attorney *de facto* and not *de jure* as admitted, he was entitled to no emolument of profit from the office. *Blackwell on Tax Titles*, *pp.* 118, 119 ; *U. S. Digest*, *p.* 466, *Sec.* 53, (*supplement.*)

*Eighth.*—The decision of the Supreme Court and the judgment of the District Court in the case of the *Territory of Minnesota ex rel Parker vs. Smith*, although entered of record December 19, 1859, took effect at the time when the right of action accrued, to wit: January, 1858. *Col. Stat. p.* 539, *Sec.* 59.

*Ninth.*—It is no defence that the Defendant paid a third party the salary of the office of District Attorney without authority from the Plaintiff who only had the right to receive it. *Chitty on Con.*, *p.* 643 ; *Story on Con.*, *p.* 1081, *Sec.* 978.

Points and authorities of Defendants in Error :

*First.*—The facts contained in the stipulation show that Seagrave Smith was District Attorney of Dakota County, *de facto* from January 1st, 1858, to December 11th, 1860, and that the said Smith performed the duties of the office during that time. Smith received the highest number of votes cast at the general election held in October, 1857, for the office of District Attorney, that he received the certificate of election to said office, took the oath of office, and gave the bond required by law ; that he entered upon the discharge of the duties of that office, and discharged those duties until ousted by the judgment of the Supreme Court, December 11th, 1859.

" An officer *de facto* is one who comes in by the forms of an election or appointment, but in consequence of some informality, omission or want of qualification, or by reason of the expiration of his term of service cannot maintain his possession when called upon by the government to show by what title he claims to hold the office." *Blackwell on Tax Titles, p.* 115, *and cases there cited;* 8 *Howard Pr. Rep., p.* 364.

*Second.*—The acts of an officer *de facto* who comes into office by color of title are valid so far as the public and third persons are concerned until he is ousted by *quo warranto. Blackwell on Tax Titles, pp.* 116, 117, 118, *and cases there cited.*

This principle has been settled by an uninterrupted series of judicial decisions, and does not require the citation of authorities to prove it.

*Third.*—The Board of Supervisors of Dakota County was a ministerial body, and had no right to decide who was the District Attorney of Dakota County *de jure.* That could only be determined by the Courts. The interests of the community imperatively require the adoption of a rule making the acts of officers *de facto* valid so far as the public and third persons are concerned, otherwise it would constitute every citizen a judge of official titles. And the interests of the community as imperatively require the adoption of a rule that the public and third persons shall be protected in transacting business with an officer *de facto*, and in fully recognizing him as the officer clothed with the authority and power appertaining to the office in employing him to transact official business, and paying his salary or fees therefor.

The title of an officer *de facto* cannot be called in question in a proceeding to which he is not a party. *Blackwell on Tax Titles, p.* 116; *Morse vs. Colby*, 5*th N. H. Rep. p.* 222; *The People ex rel. Bush and Higby vs. Collins*, 7 *John.* 549.

*Fourth.*—The salary was payable to the officer holding the office and not to the office. *C. L.* 165, *Sec.* 10; *Connor vs. The Mayor etc. of New York*, 1*st Selden's Rep. p.* 285.

*Fifth.*—The Supervisors of Dakota County were fully protected in paying the salary of the District Attorney of Dakota County to the person who had received the highest number of

votes, and who held the certificate of election. Parker being, as the courts afterwards decided, the District Attorney *de jure* has been damaged by Smith usurping the office and receiving the salary. The Common Law and the Statutes of Minnesota give him a remedy for the wrong suffered in an action against Smith for damages. *Espinasse Nisi Prius, vol.* 2, *p.* 277; *C. S. p.* 619, *Sec.* 12; *Territory of Minnesota ex rel. Edward F. Parker vs. Seagrave Smith.* And Mr. Parker must pursue the remedy given him by the Statute.

The adoption of any other rule would be oppressive, and opposed to public policy. It would require every person before paying a public officer the compensation given by law for official services, to examine the Constitution and Laws of the State to ascertain the fact that the officer had resided in the State the length of time necessary to eligibility, to ascertain that his age at the time of his election was sufficient to render him eligible, that the election was legally conducted, and all other facts necessary to constitute the officer a *de jure* officer.

The adoption of any other rule would make the payment of the fees or salary to a public officer at the peril of the person paying such salary or fees.

The Common Law and the Statute very wisely adopts a rule free from oppression, and in accordance with sound public policy. It protects third persons and the public in transacting business with officers *de facto* and paying them their fees; and gives the *de jure* officer who has suffered a wrong his remedy for the wrong suffered against the wrong doer. It protects the rights of the public and every person, and gives a remedy for every wrong.

EDWARD F. PARKER, Plaintiff in Error, *in person.*

JOHN R. CLAGETT and F. M. CROSBY, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J. The facts stipulated by the parties show clearly that although Parker was entitled to the office of District Attorney of Dakota County, and was the officer *de jure*, yet Smith was in possession of the office under color of an election, and was fortified by the certificate of

election from the proper officer. The question is, (the Board having paid the salary to Smith) were they justified in so doing, and can Parker maintain an action against them for the salary during the period that Smith held the office *de facto* and received the salary? The stipulation declares that "Parker acted as District Attorney whenever called upon during the years 1858 and 1859." This fact could only have been inserted in the stipulation to show notice in the Board of his claim to the office, because it could not have effect in any other way that I can see. There cannot be two persons *in possession* of the same office at the same time, the one *de jure* and the other *de facto*. Where there is but one office, there can be but one in possession of it. *Boardman and Parry vs. Holliday and others*, 10 *John. Ch. R.* 223. Parker can take no advantage from his having acted as District Attorney, if he admits that Smith was the officer *de facto*, because it is impossible that Smith and himself could both stand in that relation to the same office. If this fact was inserted in the stipulation to charge upon the Board of Supervisors, notice of his claim to the office, it fails, in not showing that he was ever instructed by them to act in that capacity. He might have been called upon to act as District Attorney in many ways, and the Board of Supervisors been entirely ignorant of the fact, so I cannot see that this part of the stipulation can be made operative in any way, to influence the question of the propriety or impropriety of the payment made to Smith.

The rule that the acts of an officer *de facto* are valid so far as they affect the public, is too well settled, and too valuable to the interests of society, to be now questioned or encroached upon. The act of the officer *de facto*, is sustained upon the ground that to question it, would devolve upon every citizen transacting business with the official, the duty of deciding for himself the regularity, the eligibility, and every other condition upon which depends the title of the incumbent to the office he holds, or to deal with him at his peril. No such risk is incurred by third parties, but the fact that a person is in the quiet and notorious possession of an office, and exercising its functions under color of authority, is a perfect warrant for every one to recognize his official character, both by invoking

his powers, and paying him the fees allowed by law for his services. I cannot see any reason why the Board of Supervisors in paying the salary of an officer of the county, should be governed by different rules. They are not officially in possession of any facts concerning the election or eligibility of an official beyond those open to the private citizen. The circumstances of this case forcibly illustrate the impracticability of requiring any one to look beyond the presumption arising from the possession, exercise and enjoyment of the office, in determining who is the officer, as they show that the disqualification may flow from facts wholly occult; and as this presumption is sufficient to justify the Board in engaging the official services of the person in possession in behalf of the county, it must also afford them protection in paying to him the fees or salary allowed by law as his compensation.

What effect a proper notice of the claimant Parker's rights, and a protest from him against the salary being paid to Smith, properly served upon the Board before payment made to him, would have had upon the question of a recovery by Parker against the Board, after his being inducted into the office, it is unnecessary to decide, as it does not appear from the case, that the Board knew that any one except Smith made any claims whatever to the office. And indeed it may well be doubted whether the Board had any right to adjudge the election of Smith null, in any such collateral proceeding as an application for the payment of the salary of the office, or at all, they not being a judicial body. In the case of *The People ex rel. Bush & Higby vs. Collins*, 7 *John.* 549, a Town Clerk refused to record a survey of a road, because one of the commissioners had signed the survey by a name different from the one by which he was elected, and had not qualified according to law, by taking the oath and filing a certificate of it with the Clerk, but the Court awarded a peremptory mandamus against him, holding that the commissioner was an officer *de facto*, and the Clerk being a ministerial officer merely, had no right to adjudge his acts null, and refuse to recognize them. This is a much stronger case than the one at bar, as there the Clerk being the depositary of the oath of the commissioner, had official knowledge that he was not qualified to act, yet he was

held bound to recognize him.   The principle is here carried to the fullest extent.

The decision below was correct, and the judgment is affirmed.