THE STATE, EX REL. FRANK N. McDONALD v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. The writ of *mandamus* cannot be used to compel a municipality to pay damages for its illegal discharge of an employe.
2. Salary having been paid by a municipality to a *de facto* incumbent of an office cannot be recovered from the municipality by the *de jure* officer.
3. Where, upon a demurrer to a replication to a return to an alternative writ, it appears upon the pleadings that the relator is entitled to only a part of what he demands in his alternative writ, there must be a judgment against the relator.

On demurrer to a replication filed to an answer to an alternative writ of *mandamus.*

An alternative writ of *mandamus* was filed on behalf of the relator, Frank N. McDonald, directed to the city of Newark, commanding the respondents to show cause why the common council should not cause the name of the relator to be entered on the pay-roll of the officers and employes of the city of Newark, from August 1st, 1892, to August 18th, 1894, and cause a warrant to be drawn upon the city treasurer, in his favor, for his salary during this period, at the rate of $110 per month.

The writ set up that the relator had been elected to the office or position of clerk in the city treasurer's office, on March 19th, 1891, by the committee on finance of the common council and qualified as such, and that the common council had removed his name from the pay-roll.

The answer to this writ admitted the appointment and removal, but set up that the relator was a mere clerk, and that he had no official character; that the term for which he was to hold his position was not fixed by law; that his place had been filled by the appointment of other persons by whom the pay for such position had been received from the city; that during this period the relator had been wholly occupied with his private business, wherein he had earned more than the amount of his salary as clerk.

The replication set up that a writ of *certiorari* had removed the resolution removing the relator, into the Supreme Court, where the resolution was set aside at February Term, 1893; that the city, by a writ of error, removed the judgment of the Supreme Court to the Court of Errors, by which court the writ of error was dismissed at the March Term, 1894; that a writ of *mandamus* was issued, by force of which the relator was reinstated October 15th, 1894; that defendant tendered himself ready to perform all the duties of the position, and that the city knew of his claim to the right of possession of said office.

To this replication there is a demurrer.

Argued at February Term, 1895, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, REED and GUMMERE.

For the relator, *James E. Howell.*

For the respondents, *Chandler W. Riker* and *Sherrerd Depue.*

The opinion of the court was delivered by

REED, J.   The relator was elected clerk in the city treasurer's office by the finance committee of the Newark common council, under the authority conferred upon such committee by section 17 of a supplement to the Newark charter. *Pamph. L.* 1873, *p.* 322.

This section provides that the committee on finance shall have power, from time to time, to employ such clerical help and assistance in the office of the comptroller, city treasurer, auditor of accounts and city surveyor, as may be necessary to secure a prompt and efficient performance of the duties imposed upon said officers, but the common council shall at all times, whenever they shall choose to exercise the same, have full control over such appointments.

The alternative writ sets out that the common council, by resolution, discharged the relator from his position.   It sets out that upon *certiorari* bringing this resolution into this court, it was set aside.

The adjudication thus referred to in the pleadings was made in the case of *McDonald* v. *Newark*, reported in 26 *Vroom* 267.   In the opinion delivered in that case it was held that, by the appointment made by force of the section above set out, the relator did not become an officer of the city of Newark.   The use of the writ of *certiorari* was permitted in that case upon the sole ground that inasmuch as he was not an officer, but was only an employe of the city, he had no right to employ the writ of *quo warranto* to test the right of the incumbent to hold the place from which the relator had been discharged.

The answer asserts that the relator had no official character, and this statement is not traversed.

So it must be conceded that the pleadings conclusively exhibit that the relation existing between the city and the relator, at the time of the discharge, was that of master and servant.

It follows, therefore, that the resolution of the common council must be regarded as an illegal discharge of a servant before the end of his period of service.

The relator asks for the mandatory writ of this court commanding the city to pay him his salary in full for the entire period of his disemployment.

I think that this use of this prerogative writ is novel even in this state.

We have allowed it to go to a disbursing officer of the county to pay the salary of a county officer. *State, Strong, pros.,* v. *County Collector of Middlesex,* 12 *Vroom* 232.

Its use has also been permitted to compel boards of school trustees to deliver orders upon the township clerk to pay out of moneys in his hands for that purpose the salaries of school teachers. *Apgar* v. *Trustees of School District,* 5 *Vroom* 308.

The writ in the last-mentioned case went upon the ground that the money to pay the teacher had been collected by taxation and was in the hands of the officer charged with its payment. *Galbraith* v. *Building Association,* 14 *Vroom* 389, 390.

This case closely approaches the extreme limit of the right to use the writ for the collection of such claims against municipalities, and must rest upon the peculiar features above mentioned, for the general rule undoubtedly is that *mandamus* is not the proper remedy to enforce the payment of a debt due from a municipality in advance of a judgment. *State, ex rel. Little,* v. *Union Township,* 8 *Vroom* 84; *High. Extr. Rem.,* § 341.

There are no features apparent in the pleadings which withdraw the relator's claim from this general rule. There is no

fund collected for the payment of this specific debt remaining in the hands of a ministerial officer whose sole duty is to pay it over to the relator. On the .contrary, out of the general fund of the city there has already been paid out to another filling the position the salary .which the relator now wishes to receive.

Aside from this phase of the case, it appears that while the relator asserts a right to receive a liquidated amount, his real claim is for damages resulting from his illegal discharge from the service of the city before his term had expired. His salary has been paid up to the date of his discharge, and it seems to be now settled that under these conditions he, as an employe, can only recover damages for his discharge. *Sm. Mast. & S.* *188.

The amount of such damages is, of course, entirely unliquidated. *Jueqnot* v. *Boura,* 5 *Mees. & W.* 155 ; *Smith* v. *Thompson,* 8 *C. B.* 44.

The insistence that such a claim can be adjusted and its payment enforced by a writ of *mandamus* is too manifestly unsound for discussion.

Again, it may be remarked that if the relator could be regarded as an officer, or if his position by force of the act of 1889 (*Pamph. L., p.* 231), which permits Union soldiers to hold such positions during good behavior, should be regarded as so analogous to an office that the rule regulating official compensation should be applied to him, yet he stands in no more favorable position. It is conceded in the. pleadings that during the interval of his discharge the salary was paid to a *de facto* incumbent of the office.

Now, although the case of *Stuhr* v. *Curran,* 15 *Vroom* 181, involved the right of a *de jure* officer to recover a salary from a *de facto* officer, yet the ground of decision in that case leads necessarily to the denial of any right in such *de jure* officer to recover from a municipality salary which has been paid to a *de facto* officer for services rendered in the office.

In New York, where the right of the *de jure* officer is regarded with more favor than in this state, it is neverthe-

less entirely settled that the salary of an office having been once paid to a *de facto* officer, cannot be recovered from the municipality by the *de jure* officer. *Dolan* v. *Mayor*, 68 *N. Y.* 278; *Terhune* v. *Mayor, &c.*, 88 *Id.* 247.

Indeed, this point was so decided by this court at last term, in the case of State, Duer, pros., *v.* Board of Fire Commissioners of Newark.

But it is contended that, for a part at least of the period during which the relator was out of office, he is entitled to be paid by the city.

The writ of error, bringing up the judgment of the Supreme Court vacating the resolution of discharge, was dismissed at the March Term of the Court of Errors.

The judgment of the Supreme Court at that moment became a finality. The intrusive character of the *de facto* incumbent's occupancy of the position was then established at law.

Now, it was held by the Court of Appeals of New York, in the case of *McVeany* v. *Mayor*, 80 *N. Y.* 185, that if, after such an adjudication and after notice thereof to the disbursing officer, the intruder still continues to perform the duties of the office, the rendition of the services is in behalf of the one entitled to the office, and the latter may maintain an action against the municipality to recover the compensation, although the disbursing officer has paid it to the intruder.

Whether, when the disbursing officers are notified of, or proceedings are taken to enjoin the payment of money to the incumbent, after such an adjudication, a recovery can be had against the city, on the theory propounded in *McVeany* v. *Mayor, supra*, that the intruder is performing the services for the legal officer, need not be now decided. It need not be decided, for, if it be conceded that a right of action exists under the conditions named, such a concession will not aid the relator in the present proceedings.

In the first place, it is not shown who the disbursing officer or officers are, or that any notice was given to him or them of the dismissal of the writ of error.

In the second place, the alternative writ asks for an order directing the city to cause the name of the relator to be put upon the pay-roll from August 1st, 1892, to October 23d, 1894.

The concession of the right to pay from March, 1894, to October 23d, 1894, cannot assist the relator upon this demurrer filed by the city. If judgment goes against the demurrant, a peremptory writ would go in the language of the command contained in the alternative writ. The prayer for relief in the alternative writ must be in exact conformity with the legal obligation of the defendant. The peremptory writ is in the nature of an execution and must follow the alternative. *Rader* v. *Township of Union*, 14 *Vroom* 518; *High Extr. Rem.*, § 548.

Judgment must go for the demurrant.