CASE 89—ACTION BY I. B. NALL AGAINST GUS G. COULTER AS STATE AUDITOR TO COMPEL HIM TO PAY PLAINTIFF HIS SALARY AS COMMISSIONER OF AGRICULTURE DURING THE TIME SAID OFFICE WAS WRONGFULLY HELD BY HIS CONTESTEE.—MARCH 2.

# Nall v. Coulter, Auditor.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

OFFICERS DE FACTO—PAYMENT OF SALARY—RIGHTS OF SUCCESSFUL CONTESTANT—LIABILITY OF STATE—CONSTITUTIONAL LAW—CONSTRUCTION.

Held: 1. The canvassing board, whose duty it was to count, but not determine the legality of votes, declared a candidate for a State office elected, and he assumed the office, and received the salary until on contest his opponent was declared elected. HELD, that the successful contestant could not recover from the State the salary paid contestee during his incumbency, contestant's remedy being by suit against contestee.

2. Const., section 235, declaring that the salaries of public officers shall not be changed during their terms, and that the General Assembly shall regulate by general law what deductions shall be made for neglect of official duty, does not entitle

a successful contestant for a State office to recover from the State salary paid contestee during his incumbency, there being no change of or deduction from contestant's salary merely by being remitted to his remedy against contestee.

HAZELRIGG, CHENAULT & HAZELRIGG, FOR APPELLANT.

### AUTHORITIES.

1. As to the change of the time of holding a State office or deduction of salary. Kentucky Constitution, sec. 235; Kentucky Statutes, sec. 3763; 79 Ky., 306, 6 Bush, 3, and 3 Met., 241.

2. Actual qualification not necessary. 2 Atl. Rep., 505, 101 N. Y., 526, 77 Maine, 231; A Wyoming Case, 45 L. R. A., 295.

3. The right to the emoluments of an office follows the legal right to the legal title, not the colorable possession of the office. People v. Tierman, 30 Barb. (N. Y.), 193; 28 Call., 21; 37 Cal., 193; The Opinion of Judge Cooley in 20 Mich. Rep., 186; 53 Miss., 721, supporting the opinion of Judge Cooley, 79 Maine, 484. See also 101 N. Y., 526, 77 Maine, 231; A Wyoming Case, 45 L. R. A., 295.

4. Definition of office. 6 Wall (U. S.), 393.

5. Salary is an incident to the office and can not be detached from it. 80 Va., 492, 28 Cal., 21, 102 N. Y., 538.

6. Payment to *de facto* officer may be enjoined, statutes to same effect. 6 Abbott's Pr. (N. Y. Sup. Ct.), 296; Arizona Rev. Stat., 3065, Cal. Polit. Code, sec. 936; Idaho Rev. Stat., sec. 380.

7. For collection of general authorities see, vol. 8, Am. & Eng. Ency. of Law, 808, 45 L. R. A., 295, notes.

N. B. HAYS, ATTORNEY GENERAL, FOR APPELLEE.

### MOTION TO DISMISS APPEAL.

The appellee, by counsel, moves the court to dismiss the appeal herein, for the following reasons:

1. The court, from an examination of the petition, will see that there is no claim against Gus. G. Coulter, as an individual; that there is a total want of personal liability on the part of said Coulter, either as an individual or as auditor of the Commonwealth, and that he has not been appointed to defend this action on behalf of the Commonwealth; that there has neither been an act of the General Assembly, nor joint resolution, authorizing the appellant to sue this Commonwealth.

2. It is a rule of law that the Commonwealth is not embraced by these rules of litigation which are made to operate

Nall v. Coulter, Auditor.

between individuals, unless she has given her consent by an act of the General Assembly, showing her intention to subject herself to the same rules of practice.

3. Because this court judicially knows the Commonwealth can not be sued, and this court given jurisdiction over her, without legislative authority so to do. Constitution, sec. 231.

4. That parties will not be permitted, as decided by this court by authorities cited below, "To evade this constitutional inhibition by ignoring the State in their suits, and proceeding directly against the public officer, having the custody of the moneys sought to be reached." Divine v. Harvie, 7 Mon., 439; Tate v. Salmon, 79 Ky., 540; Shoemaker v. Grant County, 36 Ind., 175; Taylor v. Hall, 71 Texas, 206; Rodman v. Musselman, 12 Bush, 354; Otawo County v. Alpins, 36 N. W. Rep., 702; League v. DeYoung, 2 Texas, 497.

5. This is an action, asking a writ of mandamus against the appellee, Coulter, to issue his warrant to the appellant for an alleged sum of money, and in order to entitle him to said writ, it must appear, first, that the appellant has a legal right to demand the issual of said warrant to him; second, it must also appear that it is the legal duty of said Coulter to issue said warrant, but the question involved here is to determine whether or not the appellant has a legal right to make this demand against the Commonwealth of Kentucky, who is not a party to this proceeding, and to determine said right, the Commonwealth has, as yet, withheld her consent, without which neither this court nor any other court in this Commonwealth has jurisdiction to decide; and not until the right of the appellant has been so decided, have the courts of this Commonwealth jurisdiction to grant a writ of mandamus against the said appellee, and this whole proceeding is without due process of law. Cited, Lowe v. Phelps, 14 Bush, 645, Norman, Auditor v. Ky. Board of Managers, &c., 93 Ky., 538.

6. Because this is not an action to compel an officer to perform either an executive or ministerial duty, but an action to judicially determine legal rights between the appellant and the Commonwealth of Kentucky by evading the constitutional inhibition, embraced in section 231. And therefore the writ of mandamus will not lie and this appeal should be dismissed.

HAZELRIGG, CHENAULT & HAZELRIGG, FOR APPELLANT.

RESPONSE TO MOTION TO DISMISS.

The State has done all it can do to give appellant his salary as commissioner of agriculture, and while it has not au-

thorized a suit to be brought against itself, it has done better. It has actually appropriated the money with which to pay the salary. The auditor is the ministerial officer who is the stake-holder, and if he fails or refuses to pay it over, he may be proceeded against by mandamus.

If it be said that the appellant must first establish his right to the money in some court of the State, we answer that such right has already been established, and judgment rendered in favor of Nall.

Mandamus is the universal remedy adopted to test the *right* of the officer to his salary.

### CITATIONS.

Pryor v. Stone, Auditor, 103 Ky., 645; Auditor v. Halbert, 78 Ky., 577; Auditor v. Adams, 13 B. M., 151.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING.

In the election of State officers in the month of November, 1899, the appellant, Nall, was a candidate for the office of Commissioner of Agriculture, one Throckmorton being the opposing candidate. On the face of the returns Throckmorton was declared elected by the canvassing board, a board duly created by and under the laws of the Commonwealth, whose duty it was to count the votes and determine for whom the greater number of votes were cast. It was not the duty of this board to pass upon the legality of the votes cast. On January 1, 1900, Throckmorton took the oath of office, and entered upon the duties thereof. But after the canvassing board had declared Throckmorton duly elected on the face of the returns, the appellant, Nall, instituted a contest, claiming that because of irregular acts done, whereby the votes counted for Throckmorton were procured, and by reason of illegal votes cast at the election, he was entitled to the office. The contest board decided that Nall was the person elected. Upon this finding Nall instituted a proceeding to oust Throckmorton, who refused to give up the office. After this court

decided that Nall was entitled to the office, Throckmorton
vacated, and appellant entered and assumed the duties of the
office.    It appears that the then auditor, Sweeney, paid
Throckmorton his salary for the months of January and
February.  The present suit was brought by appellant against
Auditor Coulter to compel him to issue his warrant on the
Treasurer of the Commonwealth for the sum of $382.25, the
amount of the salary due him from the 1st day of January
to the 25th of February, 1900, the date when the contest
board declared appellant entitled to the office.    In other
words, appellant claims that by reason of his being entitled
to the office on the 25th of February he is entitled to the
salary due from the State beginning January 1, 1900.   The
appellee claims that the State paid this salary to Throck-
morton, who was in the office, attending to the duties thereof,
and who had been duly declared elected by the board of
election commissioners, and held the apparent legal title
to the office; that, if the appellant is entitled to this salary,
he must look to Throckmorton for it, who received it, and
contested with him the right to the office.

We are of the opinion that appellee's contention is the
correct one.  We have not been referred to, nor have we been
able to find, any case decided by this court directly in point;
but the courts of many States, as well as the English courts,
have passed upon the question.  The decided weight of au-
thority, both in numbers and reason, uphold the principles
contended for by appellee.  We have been referred to many
cases apparently holding the opposite rule, but upon a close
examination of them it appears that many are not in con-
flict; some few of them apply to usurpers, having no color
of right or title to the office; some few have reference to
cases where the appointment or election of the person who

held the office and performed its duties was void. The cases of Stone v. Caufield, 21 R., 1641, 55 S. W., 924; Gorley v. City of Louisville, 21 R., 1606, 55 S. W., 886, also same case reported on first appeal, 104 Ky., 372, 20 R., 602, 47 S. W., 263, are cited by appellant. The right of Caufield to compel the auditor to issue to him a warrant for his salary as clerk of the penitentiary was upon the idea that his removal from office by the acts of the State's officials was a nullity. This precise principle was involved in the Gorley case, *supra*. In these cases the State and city officials professing to act for and on account of the State and city committed illegal and void acts in the removal of Caufield and Gorley. At least it appears that it was upon these principles that they might be permitted to recover their salaries from the State and city. The case at bar is different. Throckmorton was at least a *de facto* officer, and not a usurper, and it is not charged that the State board of canvassers committed any illegal or void act with reference to granting Throckmorton a certificate.

In Am. & Eng. Ency. of Law (2d Ed.) vol. 8, p. 783, it is said: "To constitute a person an officer *de facto*, there must be some facts, circumstances, or conditions which would reasonably lead persons who have relations or business with the office to recognize and treat him as the lawful incumbent, and submit to or invoke his official action without inquiry as to his title." Again, on page 794: "Color of title to an office is defined to be 'that which in appearance is title, but which in reality is no title.' It is this color of title or, it has been said, color of authority, which distinguishes the *de facto* officer from a mere intruder or usurper, whose acts are absolutely void." It can not be said that Throckmorton was a mere intruder or usurper, but, on the contrary, he assumed the duties of the office with the legal certificate

of the board of canvassers, and so remained in office until February 25, 1900, when the board of contest declared appellant elected and entitled to the office. The then auditor, Sweeney, had the right to believe that Throckmorton was then the legal officer. Upon what principle of reasoning can it be required of the auditor to investigate and determine at his peril whether or not a person has been legally elected to an office before he draws his warrant upon the treasurer for his salary? To require the auditor to pay at his peril, or withhold salaries until all contests were finally settled, would in many cases leave the State without officials to perform its service. In the same volume of the Am. & Eng. Ency. of Law, p. 813, it is said: "The general rule is that a State county, or municipality which, before judgment of ouster against a *de facto* officer, has paid him the salary of the office due at the time of payment, is protected against any liability to the *de jure* officer for such salary."

In the case of Dolan v. New York, 68, N. Y., 274, 23 Am. Rep., 168, the court said: "If fiscal officers, upon whom the duty is imposed to pay official salaries, are only justified in paying them to the officer *de jure,* they must act at the peril of being held accountable in case it turns out that the *de facto* officer has not the true title; or, if they are not made responsible, the department of the government they represent is exposed to the danger of being compelled to pay the salary the second time. It would be unreasonable, we think, to require them, before making payment, to go behind the commission, and investigate and ascertain the real right and title. This in many cases, as we have said, would be impracticable. Disbursing officers, charged with the payment of salaries, have, we think, a right to rely upon the apparent title, and treat the officer who is clothed with it

as the officer *de jure* without inquiring whether another has the better right. Public policy accords with this view. Public offices are created in the interest and for the benefit of the public. Such, at least, is the theory upon which statutes creating them are enacted and justified. Public and individual rights are, to a great extent, protected and enforced through official agencies, and the State and individual citizens are interested in having official functions regularly and continuously discharged. The services of persons clothed with an official character are constantly needed. They are called upon to execute the processes of the court, and to perform a great variety of acts affecting the public and individuals. It is important that the public offices should be filled, and that at all times persons may be found ready and competent to exercise official powers and duties. If, on a controversy arising as to the right of an officer in possession, and upon notice that another claims the office, the public authorities could not pay the salary and compensation of the office to the *de facto* officer, except at the peril of paying it a second time if the title of the contestant should subsequently be established, it is easy to see that the public service would be greatly embarrassed, and its efficiency impaired. Disbursing officers would not pay the salary until the contest was determined, and this, in many cases, would interfere with the discharge of official functions." A case very similar to the one before us is found in Michel v. The City of New Orleans, 32 La. Ann., 1097. The court in that case said: "Sound public policy dictates the wisdom and the necessity of paying the salary to the officer in the possession of the office and performing functions required for the protection of society and the maintenance of peace and order; and after this duty is performed both law and equity forbid that

the city or State be compelled to account for the same salary
to any other party who may subsequently be decreed as
the proper officer. . . . We are clear that under our laws
the right of a *de jure* officer in such a case must be exercised
against the intruder for the recovery of fees or of the salary
of the office, and no recourse exists against the State or city
for such salary as was paid to the *de facto* officer." The case
of County Commissioners, etc. v. Anderson, 20 Kan., 298,
27 Am. Rep., 171, was a case which arose over a contest
for the county clerk's office. Anderson and one Wildman
were opposing candidates. The board of canvassers gave
Anderson a certificate of election, and he took the oath and
possession of the office. Wildman contested his election. The
contest court decided in favor of Wildman, awarding to him
the certificate previously issued to Anderson. Wildman im-
mediately qualified, and took possession of the office. Ander-
son then took the case to the district court on appeal, and
that court reversed the judgment of the contest court, and
awarded the office to Anderson. Wildman then appealed to
the Supreme Court, and that court affirmed the district
court. Wildman in the meantime held the office, and re-
ceived his salary and fees from January to October. The
county commissioners had during all this time full knowl-
edge of all this proceeding, but nevertheless paid the salary
to Wildman. Anderson sued the board of county commis-
sioners for $900, the amount of salary they paid Wildman
for the time he held the office while the contest was proceed-
ing in the courts. In that case the court said: "It must be
remembered that Wildman was not a mere usurper, but he
was an officer *de facto* having possession of the office under
color of title. What would be the rule if he were a mere
usurper, it is not necessary for us to decide in this case. All

that we now decide is that where a person is in possession of the office of county clerk under color of title, and is the county clerk *de facto,* and claims to be the county clerk *de jure,* and the board of county commissioners pays to him the salary due to the right incumbent of such office, the county clerk *de jure* has no action against the county board for such salary, and this notwithstanding the fact that the county board may have known at the time they paid said salary that the question as to the title to the office was in litigation, and notwithstanding the fact that the county clerk *de facto* may be insolvent. The remedy of the county clerk *de jure* in such a case is an action against the county clerk *de facto.*" To the same effect are the cases of Auditors of Wayne County v. Benoit, 20 Mich., 176, 4 Am. Rep., 382; Smith v. Mayor, 37 N. Y., 518; and other cases which we deem it unnecessary to cite.

Appellant claims that he is protected by section 235 of the State Constitution. This section is as follows: "The salaries of public officers shall not be changed during the terms for which they were elected; but it shall be the duty of the General Assembly to regulate, by a general law, in what cases and what deductions shall be made for neglect of official duties." He contends that, if he be not allowed the whole salary for the full term of four years, this would be a deduction from his salary in the meaning of this provision of the Constitution, and a violation of this provision of the Constitution. In our opinion, this section of the Constitution has no application to a case like this. This is not an effort to decrease or change his salary, nor make any deduction therefrom for any neglect of official duty. The appellant had the right to sue the party who litigated with him for this office and recover that part of the salary paid

him while in the possession of the office. But it is suggested that in some instances contestants for office are insolvent, and then the officer would lose a part of his salary unless the injured party was permitted to recover from the State, county, or municipality. This would be unfortunate, but many persons have suffered loss of claims and costs by being forced to engage in litigation with insolvent persons.

It is also contended "that the State, by its officers and agents, wrongfully prevented appellant from discharging the duties of his office for a time, and that the State can not now be heard to say that appellant during that time neglected his official duty, and therefore must not be paid." We do not decide that appellant is not entitled to his salary, or that he was guilty of any neglect of official duty, but conclude that his remedy is against the person who received a part of his salary. It is true that the board of canvassers, board of contest, circuit judge who tried the case, and the Court of Appeals, were officers and agents created by the State, but the creation of them was for the purpose of guarding and protecting the rights and interests of the State and individual. We can not admit that the State should be held responsible for the mistakes or errors of judgment of its officials. To carry such a construction to its logical conclusion would involve the State, and make it liable for all losses incurred by the litigant by reason of the errors or mistakes of its officials.

For these reasons the judgment of the lower court is affirmed.