## Stearns, *Mayor*, v. Sims.

### No. 105.   Opinion Filed September 14, 1909.

(104 Pac. 44.)

1. **MUNICIPAL CORPORATIONS—Officers—Compensation—Payment to to Officer De Facto.** Where a de jure chief of police is, pending suit on charges against him in the district court, wrongfully suspended by order of the judge thereof at chambers which said order is later set aside and said suit dismissed, and where said city pays a chief of police de facto, during his incumbency, the salary provided by law, said officer de jure after obtaining possession of the office cannot recover from the city the salary for the same period.

2. **MANDAMUS—Right to—Discretion of Court.** The writ of mandamus is a discretionary writ, and, while it may issue where there is a clear legal right, a court should always refuse it where the record shows the injustice of plaintiff's claim.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County; W. N. Maben, Judge.*

Mandamus by W. F. Sims against F. B. Stearns, as mayor of the city of Shawnee. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Pendleton, Abernathy & Howell,* for plaintiff in error, citing: *Bayard v. U. S.,* 32 L. Ed. (U. S.) 116; *Territory ex rel.*

v. *Crum* (Okla.) 73 Pac. 297; 26 Cyc. 151, 152; *Com'rs Saline Co. v. Anderson,* 20 Kan. 298; *Martin v. New York,* 81 N. Y. Supp. 412; *Terhune v. Mayor,* 88 N. Y. 247; *Dolan v. Mayor,* 68 N. Y. 278; *Michel v. New Orleans,* 32 La. Ann. 1094; *Scott v. Crump,* 64 N. W. 1 (Mich.); *Westberg v. City of Kansas,* 64 Mo. 493; *Steubenville v. Culp,* 38 Ohio St. 18; *Walton v. Mc-Phetridge,* 52 Pac. 731; *Sawyer v. Colgan,* 36 Pac. 580; *Chalk v. White,* 29 Pac. 979.

*McKenzie, Saunders & McKenzie* and *F. H. Reily,* for defendant in error, citing: *Bridge Co. v. Wheeler,* 35 Wash. 40; 26 Cyc. 315; *Ward v. Marshall* (Cal.) 30 Pac. 1113; *Memphis v. Woodward,* 12 Heiskell (Tenn.) 499; *Andrews v. Portland* (Me.) 10 Atl. 458; *Davenport v. City of Los Angeles,* 80 Pac. 684; *Dorsey v. Smyth,* 28 Cal. 21; *Carroll v. Seibenthaler,* 37 Cal. 193; *Rasmussen v. Board of Com'rs,* 56 Pac. 1098; *Tanner v. Edwards,* 86 Pac. 765; *Fitzsimmons v. Brooklyn,* 7 N. E. 787; *Blydenbur v. Carbon Co.,* 56 Pac. 1106 (Utah); *State v. Carr* (Ind.) 28 Am. St. Rep. 163.

TURNER, J. On December 7, 1907, W. F. Sims, defendant in error, plaintiff below, brought suit in the district court of Pottawatomie county to mandamus F. P. Stearns, as mayor of the city of Shawnee, plaintiff in error, defendant below. The petition substantially states that on April 2, 1907, plaintiff was duly elected chief of police of said city, and by ordinance theretofore passed his salary as such was fixed at $1,200 per year; that on July 3, 1907, Hon. B. F. Burwell, judge of the Third judicial district of the territory of Oklahoma, at chambers in said city unlawfully suspended plaintiff from said office on complaint sworn to by a private citizen of said city charging him with violating sections 12, 13, art. 56, c. 25, St. Okla. 1893 (sections 2530 and 2531), the allegations of said complaint being supported by the affidavits of three adult witnesses; that on November 22, 1907, Hon. W. N. Maben, judge of the district court for the Tenth judicial district of the state of Oklahoma at cham-

bers in Tecumseh, state of Oklahoma, set aside said order of suspension on the ground that the same was illegal; that on December 3, 1907, said plaintiff duly presented his bill to the city council of the city of Shawnee, verified as by law required, for his salary, $500, including the period of his suspension; that the city council of said city duly allowed the same; that on December 5, 1907, the district court for said district in and for Pottawatomie county on motion of plaintiff dismissed said cause against him; that during his said suspension the county commissioners appointed another to fill said office who received from the city the salary during plaintiff's suspension; that thereupon plaintiff caused the clerk to draw a warrant for $500, and presented same to defendant as mayor of the city of Shawnee for his signature as by law provided, who refused and still refuses to sign or issue the same, and prays that a peremptory writ of mandamus issue compelling defendant to sign said warrant and for general relief. On the same day there was filed a waiver of summons and a statement of facts substantially as set forth in said petition, which it was agreed was submitted to the court as the evidence in the case upon which to base its judgment, and which said cause on said date the court took under advisement. On December 9, 1907, there was a demurrer to the petition which was later overruled and exceptions saved, and, defendant electing to "stand on his demurrer," the cause coming on to be heard upon "the petition of plaintiff, the return thereon, and the agreed statement of facts," the court found, in effect, that plaintiff's suspension from office was illegal, that he was entitled to his salary during that time, and ordered defendant to sign the warrant for the amount thereof as drawn by the city clerk. To review which said judgment defendant brings the case here.

Inasmuch as it appears by stipulation of counsel attached to the agreed statement of facts that it is the desire of both sides to get "this question before the court purely and solely upon its

merits," we pass all questions of pleading, and go directly to the main contention. The question for us to. determine is whether an official salary which has been paid by a municipality to a de facto officer and due at the time of payment can be recovered from the. municipality the de jure officer after he regains possession of the office. The trial court held that it could, but therein we think the court erred. There is, however, great conflict of authority, but the general rule is as stated. . 8 Am. & Eng. Enc. of Law, 813, lays it down thus:

"The general rule is that a state, county, or municipality which, before judgment of ouster against a de facto officer, has paid him the salary of the office due at the time of payment, is protected against any liability to the de jure officer for such salary. * * * "—and cases cited.

29 Cyc. 1430. says:

"The payment of the official salary to a de facto officer is, however, a defense to a claim against the public corporation or disbursing officer making such payment in an action brought against it, or him by the de jure officer"—and cases cited.

One of the latest. and leading cases adhering to the rule as stated is Nall v. Coulter, State Auditor, 117 Ky. 747, 78 S. W. 1110. In that case Nall and Throckmorton were opposing candidates for the office of commissioner of agriculture in the November election of 1899 for state officers. On the face of the returns Throckmorton was declared elected by the canvassing board whose duty it was to count the votes, and determine for whom the greater number were cast. They had nothing to do with determining the legality of those votes. On January 1, 1900, Throckmorton took the oath of office, and entered upon the discharge thereof. After the result of the election had been declared, Nall instituted a contest claiming title to the office, and the contest board decided in his favor. Upon this finding Nall brought proceedings to oust Throckmorton, and prevailed in the action, after which Throckmorton vacated and Nall entered and assumed the duties of the office. The then auditor, Sweeney, paid Throckmorton his salary for the months of January and

February, and the instant suit was brought by Nall against the appellee Coulter as auditor to compel him to issue his warrant on the Treasurer of the commonwealth for the sum of $382.25, the amount of salary due him from January 1 to February 25, 1900, the date when the contest board declared Nall entitled to the office. The claim of Nall was that by reason of his being entitled to the office on February 25th, he was entitled to the salary due from the state beginning January 1, 1900. The auditor claimed that the state had rightfully paid the salary sued for to Throckmorton, who had been duly declared elected, which contestant discharged the duties of the office and apparently held the legal title thereto, and that Nall's remedy, if any, was against Throckmorton for the amount sued for. In passing the court said:

"We are of the opinion that appellee's contention is the correct one. We have not been referred to, nor have we been able to find, any case decided by this court directly in point; but the courts of many states, as well as the English courts, have passed upon the question. The decided weight of authority, both in numbers and reason, uphold the principles contended for by the appellee. We have been referred to many cases apparently holding the opposite rule, but upon a close examination of them it appears that many are not in conflict. Some few of them apply to usurpers, having no color of right or title to the office. Some few have reference to cases where the appointment or election of the person who held the office and performed its duties was void."

And, the court after distinguishing the instant case from certain cases theretofore decided by that court, continued:

"The case at bar is different. Throckmorton was at least a *de facto* officer, and not a usurper, and it is not charged that the state board of canvassers committed any illegal or void act with reference to granting Throckmorton a certificate. In 8 Am. & Eng. Enc. of Law (2d Ed.) p. 783, it is said: 'To constitute a person an officer *de facto* there must be some facts, circumstances, or conditions which would reasonably lead persons who have relations or business with the office to recognize him as the lawful incumbent, and submit to or invoke his official action,

without inquiry as to his title.' Again on page 794. 'Color of title to an office is defined to be that which in appearance is title, but which in reality has no title.' It is this color of title, or, it has been said color of authority, which distinguishes the *de facto* officer from a mere intruder or usurper, whose acts are absolutely void. It cannot be said that Throckmorton was a mere intruder or usurper, but, on the contrary, he assumed the duties of the office with the legal certificate of the board of canvassers, and so remained in office until February 25, 1900, when the board of contest declared appellant elected and entitled to the office. The then auditor, Sweeney, had the right to believe that Throckmorton was then the legal officer. Upon what principle of reasoning can it be required of the auditor to investigate and determine at his peril whether or not a person has been legally elected to an office before he draws his warrant upon the treasurer for his salary? To require the auditor to pay at his peril, or withhold salaries until all contests were finally settled, would in many cases leave the state without officials to perform its service."

And it quoted approvingly the general rule as laid down in Am. & Eng. Enc. of Law, *supra*.

We take it that in this case the city of Shawnee was not so much interested in who should draw the salary as its chief of police as in having the duties of that office faithfully discharged. So far as the interests of the city were concerned, it was immaterial who got the money. What the city needed and perhaps was compelled to have was a competent officer in that capacity. When the *de jure* officer was suspended by order of the district court, the vacancy was filled *ex necessitate*. Under the circumstances it would be manifestly unjust to hold that the city was under obligations to put itself to the trouble and expense of bringing the salary accrued during the suspension into court, and praying that the *de facto* and the *de jure* officers interplead therefor, or assume the risk of paying it to the right one at its peril. This is in line with the expressions of the courts adhering to the general rule as stated.

In *Dolan v. N. Y.*, 68 N. Y. 274, 23 Am. Rep. 168, plaintiff was duly appointed assistant clerk of the district court for

the Sixth judicial district in the city of New York by the justice of that district, pursuant to the provisions of chapter 438, p. 1031, Laws 1872. He thereupon qualified, took possession of the office, and held it until January 1, 1873, on which date one Keating, who claimed the office by appointment made by said justice on December 31, 1872, took possession and discharged the duties thereof until March, 1874, and excluded plaintiff therefrom. On that day plaintiff again took possession of the office by virtue of a judgment of ouster in an action of *quo warranto* against Keating. The conflict in the appointments arose from a misapprehension of the law on the part of the justice making them that the tenure of office of assistant clerk was at the pleasure of the appointing power. The instant action was brought after the judgment in *quo warranto* was rendered to recover the salary of the office from January 1, 1873, to March 1, 1874. Both parties appealed from the judgment of the trial court to the General Term, and from thence to the Supreme Court, which, after holding that Keating was a *de facto* officer, held that plaintiff had no right to recover of the municipality the salary for the period during which it was paid to Keaton, and in passing said:

"If fiscal officers, upon whom the duty is imposed to pay official salaries, are only justified in paying them to the officers *de jure,* they must act at the peril of being held accountable in case it turns out that the *de facto* officer has not the true title; or, if they are not made responsible, the department of the government they represent is exposed to the danger of being compelled to pay the salary a second time. It would be unreasonable, we think, to require them, before making payment, to go behind the commission, and investigate and ascertain the real right and title. This in many cases, as we have said, would be impracticable. Disbursing officers, charged with the payment of salaries, have, we think, a right to rely upon the apparent title, and treat the officer who is clothed with it as the officer *de jure* without inquiring whether another has the better right. Public policy accords with this view. Public officers are created in the interest and for the benefit of the public. Such, at least, is the theory upon which statutes creating them are enacted and justified.

Public and individual rights are, to great extent, protected and enforced through official agencies, and the state and individual citizens are interested in having official functions regularly and continuously discharged. The services of persons clothed with an official character are constantly needed. They are called upon to execute the processes of the court, and to perform a. great variety of acts affecting the public and individuals. It is important that the public offices should be filled, and that at all times persons may be found ready and competent to exercise official powers and duties. If, on a controversy arising as to the right of an officer in possession, and upon notice that another claims the office, the public authorities could not pay the salary and compensation of the office to the *de facto* officer, except at the peril of paying it a · second time if the title of the contestant should subsequently be established, it is easy to see that the public service would be greatly embarrassed, and its efficiency impaired. Disbursing officers would not pay the salary until the contest was determined, and this in many cases would interfere with the discharge of official functions."

A case based upon similar reasoning is found in *Michel v. City of New Orleans,* 32 La. Ann. 1094, where the court said:

"Sound public policy dictates the wisdom and the necessity of paying the salary of the officer in possession· of the office and performing the functions required for the protection of society and the maintenance of peace and order; and, after this duty is performed,· both law and equity forbid that the city or state be compelled to account for the same salary to any other party who may subsequently be decreed as the proper , officer. * * * We are clear that under our laws the right of a *de jure* officer in such case must ·be exercised against the intruder for the recovery of fees or of the salary of the office, and no recourse exists against the state or city for such salary as was paid to the *de facto* officer·"

In *Brown v. Tama County,* 122 Iowa, 746, 98 N. W. 562, 101 Am. St. Rep. 296, at the general election for .1899, Brown and De Long were opposing candidates for the office of superintendent of schools for Tama county. Brown was declared elected by the board of canvassers, whereupon De Long contested his election, which contest was pending on January 1, 1900. On January 2, 1900, the court of contest decided that De Long was

elected to the office. Brown appealed to the district court, where said judgment was affirmed, but on further appeal to the Supreme Court the judgment of the district court and the court of contest was reversed. On being remanded to the district court, the case was again tried and final judgment entered in plaintiff's favor on June 21, 1901. In the instant case plaintiff sued for the salary of the office during the time he was prevented from discharging his duties thereof pending the contest and the discharge thereof by De Long, a period of 463 days, and demanded judgment against the county for the *per diem* compensation provided by law which had been paid to De Long during his incumbency. The court, after stating in effect that their statutory provisions did not prevent application of the general rule, said:

"With the admitted facts and the statutory provisions applicable thereto thus before us, the central question to be considered may be stated as follows: Where during the incumbency of a county officer *de facto* under color of title the county pays him the salary provided by law, can the officer *de jure* after obtaining possession of the office under final judgment of ouster maintain an action against the county for payment to himself of the salary for the same period? The decision of the courts upon this and cognate questions have developed a marked lack of harmony, and have been said by Mr. Freeman to be 'incapable of reconciliation.' The same distinguished annotator, while expressing his own dissent from the rule, says: 'If, during the incumbency of an officer *de facto,* and before any judgment of ouster has been rendered against him, the city or county of which he is such an officer *de facto* pays him the salary of the office, a decided preponderance of authorities sustains the position that by means of such payments the right of the officer *de jure* to collect his salary from such city or county is lost.' See note to *Andrews v. Portland,* 79 Me. 484, 10 Atl. 458, 10 Am. St. Rep. 280, which cites *Auditors v. Benoit,* 20 Mich. 176, 4 Am. Rep. 382; *State v. Clark,* 52 Mo. 508; *Smith v. Mayor,* 37 N. Y. 518; *Westberg v. City,* 64 Mo. 493; *Dolan v. Mayor,* 68 N. Y. 274, 23 Am. Rep. 168; *Steubenville v. Culp,* 38 Ohio St. 23, 43 Am. Rep· 417; *Shannon v. Portsmouth,* 54 N. H. 183; *Commissioners v. Anderson,* 20 Kan. 298, 27 Am. Rep. 171. The only cases noted by Mr. Freeman as sustaining the opposing views are *Andrews v.*

*Portland, supra; Memphis v. Woodward,* 12 Heisk. (Tenn.) 499, 27 Am. Rep. 750; *Savage v. Pickard,* 14 Lea (Tenn.) 46; *People v. Smyth,* 28 Cal. 21; *Carroll v. Seibenthaler,* 37 Cal. 193. It is to be said of several, if not all, of the cases last cited, that they present a materially different state of facts than we have here to pass upon. For instance, the plaintiff in the Andrews Case was duly appointed and qualified city marshal, and had been long in the actual possession of the office, when he was wrongfully excluded therefrom by the action of the city officers, after which he not only remained ready to perform, but offered to perform, the duties to which he had been appointed; and it was held that he was entitled to recover his salary for the full term, although the marshal *de facto* had also been paid."

See, also, in support of this doctrine: *Bradley v. City of Georgetown,* 118 Ky. 735, 82 S. W. 303; *Coughlin v. McElroy et al.,* 74 Conn. 397, 50 Atl. 1025, 92 Am. St. Rep. 244; *Lee v. Mayor and Council of Wilmington,* 1 Marv. (Del.) 65, 40 Atl. 663; *Henderson v. Glynn,* 2 Colo. App. 303, 30 Pac. 265; *Samuels v. Town of Harrington,* 43 Wash. 603, 86 Pac. 1071, 117 Am. St. Rep. 1075; *Shaw v. County of Pima,* 2 Ariz. 399, 18 Pac. 273; *Parker v. Board of Sup'rs,* 4 Minn. 59 (Gil. 30); *State ex rel. Vail v. Clark, Auditor,* 52 Mo. 508; *Gorman v. Com. of Boise Co.,* 1 Idaho, 655; *State ex rel. McDonald v. Mayor of Newark,* 58 N. J. Law, 12, 32 Atl. 384; *Demarest v. Mayor, etc., of New York,* 147 N. Y. 203, 41 N. E. 405; *Wayne County v. Benoit,* 20 Mich. 176, 4 Am. St. Rep. 382; *State ex rel. Greely Co. v. Milne,* 36 Neb. 301, 54 N. W. 521, 19 L. R. A. 689, 38 Am. St. Rep. 724; *Fuller v. Roberts Co.,* 9 S. D. 216, 68 N. W. 308. *Contra: State v. Carr,* 129 Ind. 44, 28 N. E. 88, 13 L. R. A. 177, 28 Am. St. Rep. 163; *Anderson v. Portland,* 79 Me. 484, 10 Atl. 458, 10 Am. St. Rep. 280; *Memphis v. Woodward,* 12 Heisk. (Tenn.) 499; *Tanner v. Edwards,* 31 Utah, 80, 86 Pac. 765, 120 Am. St. Rep. 919; *Dorsey v. Smyth,* 28 Cal. 21; *Rasmussen v. Board of Co. Com.,* 8 Wyo. 277, 56 Pac. 1098, 45 L. R. A. 295

*Christy v. City of Kingfisher,* 13 Okla. 585, 76 Pac. 135, and *State ex rel. Lee v. Chaney et al.,* 23 Okla. 788, 102 Pac.

.133, are not in conflict with this opinion. In the former Christy was the duly elected marshal of the city of Kingfisher at the April election of 1899 for a term of two years. Acting pursuant to section 439, Wilson's Rev. & Ann. St. Okla. 1903, on complaint filed against him for corruption in office, he was suspended by the mayor without the privilege of being heard, and the mayor and city council passed a resolution purporting to remove him from office. Afterwards the mayor in the name of the city commenced action in mandamus to compel him to turn over to the city all of its property in his possession, and command him to desist from acting further as city marshal. To the alternative writ he filed his return setting up the facts, whereupon the district court granted a peremptory writ and taxed him with the cost. He appealed. In passing the Supreme Court held, in effect, that said section 439 was repugnant to section 9 of the organic act for reason stated in the opinion and for that reason held the action of the city council in removing him illegal and void, and in no way affected his right to retain possession of the office, and reversed and remanded the case, with directions to deny the writ.

The latter was a suit in mandamus by the state on relation of R. C. Lee against the mayor and city council, city clerk, and city treasurer of McAlester and E. T. Gabbert. Lee in his petition alleged, in substance, that he was the duly elected chief of police of said city, and had qualified and discharged his duties as such from April 8, 1908, to July 27, 1908; that upon the date last mentioned said mayor and city council illegally and without right attempted to deprive him of the emoluments thereof by passing a resolution by said city council suspending him from said office pending the determination of certain charges preferred against him to be investigated by said city council; that said suspension was illegal and void for reasons stated; that on final hearing of said charges said city council by majority voted on August 26, 1908, pretended to remove him from said office, and declared the same vacant, and had since prevented him from dis-

charging the duties thereof, and from drawing his salary as such officer, which said salary was $100 per month as provided by ordinance of said city; that, although repeatedly demanded, said mayor and city council refused to consider and allow same; that the city clerk and treasurer had refused to issue a warrant to him for such salary and to cash the same as required by law; that $200 was thus due him as salary for the months of August and September and continues at the rate of $100 per month until April 1, 1909, and prayed for the court's writ of mandamus to compel said mayor and city council to permit him without interference to exercise the duties of said office, to recognize him as said officer, to consider, allow, and order issued to him a voucher for $200 as salary aforesaid, and against E. T. Gabbert commanding him to refrain from usurping said office of chief of police, etc. In response to the alternative writ defendants set up the preferment of the charges against relator and his trial and removal from office alleging that said charges were true. The trial court rendered judgment in favor of defendants, and Lee as relator appealed. In passing this court in effect followed the Christy Case, and held section 439, Wilson's Rev. & Ann. St. Okla. 1903, to be repugnant to section 9 of the organic act, and for that reason was not extended to and did not remain in force in the state of Oklahoma by virtue of section 2 of the Schedule to the Constitution, and for that reason held that Lee, as relator, was illegally deprived of his office, and reversed and remanded the case with instructions to proceed in accordance with that opinion. In neither case was the question involved in this case in issue or decided by the court. It follows that, as the claim sought to be enforced was illegal, the city council was without power to authorize its payment, and plaintiff in error right in refusing to sign the warrant therefor.

In *James v. City of Seattle et al.*, 22 Wash. 654, 62 Pac. 84, 79 Am. St. Rep. 957, the city council of that city passed an ordinance providing in substance for the appointment of a special committee to visit other cities for the purpose of securing in-

formation upon the subject of waterworks, 'street paving, lighting, etc.  Appellant, with other members of the city council, was appointed thereon, and visited some of said cities for that purpose and made necessary expenditures for his transportation, board, etc.  Later he filed with the secretary of the auditing committee his claim against the city for said expenditure.  It was duly audited and reported to the council and approved, and an ordinance adopted directing a warrant to be drawn for its payment, with others, and appropriating money from the general fund to pay the same.  The warrant was drawn in his favor and signed by the mayor.  Parry, city comptroller, refused to counter-sign the same, and defendant city refused to deliver it to appellant.  Suit was brought by him to procure a peremptory writ of mandate to compel respondent Parry, as city comptroller, to countersign and the city to deliver to plaintiff the warrant.  Respondent demurred to the affidavit for the writ on the ground that he failed to state facts sufficient to constitute a cause of action.  The demurrer was sustained, and plaintiff appealed.  It was there urged, as in this case, that the comptroller as a ministerial officer had no discretion in the discharge of his duties, and that the city charter provided that he shall countersign all warrants upon the treasurer.  The court in affirming the judgment of the lower court held that the charge did not constitute a valid claim against the city, and for that reason the council was without power to authorize its payment, and said:

"Where the council is without power to authorize the payment of the claim, the officer may properly refuse to countersign the warrant directing the payment of such claim." ·

To the same effect is *Van Akin v. Dunn, County Treasurer,* 117 Mich. 421, 75 N. W. 938, where the court said:

"The writ of mandamus is a discretionary writ, and, while it may issue where there is a clear legal right, a court should always refuse it where the record shows the injustice of the plaintiff's claim."

We are therefore of the opinion that the lower court erred

in directing the writ to issue, and for that reason this cause is reversed and remanded.

All the Justices concur.