## JAMES HARRISON

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS EX REL.

*Municipal Corporations—Officers—Village Trustees—Wilful Neglect of Duty—Special Election—Quo Warranto—Instructions.*

1. In *quo warranto* to determine the right to an office, an instruction that the wilful absence of relator and failure to perform the duties of his office would amount to a resignation, is properly refused if it contains no declaration as to the length of time of such absence.

2. Where a member of the board of trustees of a village wilfully absents himself from the meetings of the board, and neglects to perform the duties of his office for a period of eight months, he will be deemed to have resigned his office, and it may be filled by special election upon order of the remaining members of the board.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Ogle County; the Hon. WM. BROWN, Judge, presiding.

Messrs. O'BRIEN & O'BRIEN, for appellant.

Messrs. HATHAWAY & BAXTER, for appellees.

C. B. SMITH, J.   This was a proceeding begun in the Ogle County Circuit Court in the nature of a *quo warranto,* on the relation of Hiram A. Fogleman, alleging that James Harrison, appellant, had intruded himself into and usurped the office of village trustee in the village of Creston in Ogle county.   At the same time this suit was begun against appellant, John A. McCrea commenced a like proceeding against another person charging him with like usurpation, and Daniel Dimon commenced a third suit of the same kind against still a third man charging him with also intruding into the office of village trustee of said village of Creston.

It appears from the record that these cases all involved precisely the same state of facts or so nearly so that there was

no legal or material difference, and by consent of parties, they were all tried together. On a hearing the court gave judgment of ouster against the respondents, and thereupon appellant excepted to the judgment and now brings the case here on appeal and asks for a reversal. It was stipulated that but one of the three cases should be appealed, and that the other two should abide the judgment of the court on appeal in this case.

The facts are these: At the regular April election for village trustees for the village of Creston, the relator, Hiram A. Fogleman, was duly and lawfully elected one of the trustees of said village, and thereafter the full board was duly organized with seven members, composed of J. C. Spriggs, president, William C. Agnew, Henry Buss, Wm. J. Metler, John A. McCrea, Daniel Dimon and Hiram A. Fogleman. The regular meetings of the board were fixed on the first Tuesday of each month, in a building known as the "Observer" office. Everything went well until the 10th of August; on that night there was a regular meeting of all the members of the board for the transaction of whatever business should come before them. At this meeting a bill was presented by Reuben Heisnor for lumber furnished by him for building sidewalks in the village. A motion was made to allow the bill by some member of the board, and that an order issue for its payment, but objection was made to the allowance of the order on the ground, as alleged, that Heisnor was a mere "go-between" between the village treasury and the firm of J. A. McCrea & Co., from whom the lumber in fact came; and the bill was furnished and made out to Heisnor, simply because J. A. McCrea, being a member of the board and a member of the lumber firm, could not directly furnish the lumber to the village by reason of the prohibition of Sections 3 and 4, Chapter 102 of the Statute, entitled, "Officers." This was the only ground of objection to the allowance of the bill. The motion was then put and voted upon, and trustees Dimon, McCrea and Fogleman all voted for allowing the bill, and Buss, Agnew and Metler all voted against allowing the bill, which resulted in a tie, and thereupon the president, J.

Harrison v. The People.

C. Spriggs, voted against allowing the bill, and so the bill was rejected.   After the rejection of this bill, trustees McCrea, Dimon and Fogleman, who voted together to allow the bill, did not attend another meeting of the board until the evening of November 6th, although there had been regular meetings of the board on every evening of the regular meeting, besides several attempts to have special meetings so that the business of the village could be transacted, but at all these meetings McCrea, Dimon and Fogleman absented themselves. On the evening of November 6th it appears that Agnew was out of town, and could not attend the board, and on that evening these three long missing trustees found it to suit their joint convenience to attend, and after the board had transacted some business, and a motion was made and declared carried by the president to adjourn, one of these three men moved to take up and allow this Heisnor lumber bill, which had been rejected on the 10th of August previous.   The president declared this motion out of order and stated that the counsel had adjourned and refused to put the motion.   Then these men again absented themselves from the board and never again appeared until after their offices had been declared vacant and their successors elected by order of the remaining members of the board.

Some time after this November meeting the following notice was served on Fogleman, the appellant, viz.:

"To H. A. Fogleman, Esq.:

"You are hereby notified to attend a regular adjourned meeting of the president and board of trustees of the Village of Creston, to be held at the office of the Creston Observer, in the Village of Creston, on the 26th of December, 1888, at the hour of seven and one-half o'clock P. M., and perform the duties of your office as trustee of said village, or show cause why your said office should not be declared vacant.

"J. C. Spriggs,
"President."

On the evening fixed for this meeting it occurred that the proprietor of the "Observer" office had gone out of town or

was absent, and the place locked up, so that the room could not be occupied; but the four members went to the place at the time of meeting and stayed there about three-quarters of an hour, at the door, waiting for the delinquents to come; but they failed to respond to the notice, and the remainder of the board then got another room near by, and met and declared the office of the three absent members vacant, and ordered a special election to be held in January to fill the vacancies. That election was regularly and lawfully held, and James Harrison, the respondent, was duly elected. It is admitted that this special election was in all respects regular. At the regular meeting in February, when Harrison appeared to take the oath and enter upon his duties, then, for the first time (with the single exception of November 6th) since August 10th, the relator appears and claims his seat. Here is a period of about eight months that this relator wholly neglected and refused to attend the meetings of the board and transact the business of the people, for which he had been elected, and by his confederation with his two associates prevented a quorum and absolutely blocked the transaction of any and all business. We are satisfied, from the proof in this case, that his motive in absenting himself was to compel his associates on the board to allow an alleged illegal lumber bill, amounting to $10. Appellee seeks to explain his absence by saying he was in Kansas twice during that summer. Of course that would be a valid excuse for the time he was absent from his home; but that absence, giving it all the weight it is entitled to, is not a sufficient excuse for his long continued abandonment of his office and public duties. The proof satisfies us that he, McCrea and Dimon were acting in concert and collusion to prevent the transaction of any business until they could enforce the payment of the alleged illegal lumber bill.

On the night of December 26th, when appellee was notified to appear at the council room and attend his public duties, he swears that he went to the place of meeting and found the door locked and then went directly across the street into Dimon's store where he could see the office; the other members went there and stood on the sidewalk until long past the

time for meeting, waiting for the delinquents. He himself admits on oath that he said he would not attend the council meetings unless McCrea and Dimon went also, and assigns as a reason for not going, that if he went he would be insulted. It is also testified by another witness and not denied by Dimon, that he, Dimon, said," I put up that lumber job."

In The People ex rel. v. Hanifan, 6 App. Ct. Rep. 158, it was held that when one wilfully absents himself from attending upon the duties of his office in a village or city council for a period of five months, that he will be deemed to have resigned his office, and that the vacancy may be filled by special election upon order of the remaining members of the board.

The respondent submitted to and requested the court to hold as law the following propositions:

" 1st. It is the law that if the relator, without just cause or excuse, absented himself from the regular and adjourned meeting of the board of trustees, of which he was a member, he impliedly resigned his office as such trustee. (Refused.)

" 2d. If, in consequence of the failure of the relator and other co-trustees to attend the regular and adjourned meetings of the board of trustees, wilfully and without just cause or excuse, after having received notice to attend a meeting of said board and perform the duties of their office, or show cause why their office should not be declared vacant, said board was without a quorum, that it is the law that the trustees Metler, Buss and Agnew, together with J. C. Spriggs, as president of said board, or any one or more of them as such trustees and president, had the power and authority to declare the office of the relator, as such trustee, vacant, and call a special election to fill such vacancy. (Refused.) "

But the court refused to hold these propositions as law. We think both these propositions were rightfully refused as they both lacked any declaration as to the time of the wilful absence, which would amount to a resignation of the office. They were both wanting in that element and were properly refused as mere naked propositions of law.

It would not be strictly accurate to say, as a proposition of

law, that any and all acts of wilful absenteeism from the meetings of a board of trustees, without any reference to the time of such wilful absence, would amount to a resignation. The absence must be so long continued as to justify the legal presumption of abandonment; and the time necessary to raise such presumption must be a mixed question of law and fact to be determined from the circumstances of each case. While both of the above propositions might have been held as the law under the particular facts in proof in this case, still, for the reason above stated, there was no error in refusing them.

But we think the finding of the court was manifestly against the clear weight of the evidence, and for that error the judgment is reversed and remanded.

*Reversed and remanded.*