**Daniel Dinneen, Appellee, v. Edgar F. Bradford et al., Appellants.**

**Gen. No. 5,971.**

1. OFFICERS, § 62*—*right to salary when prevented from performing duties.* If an officer is wrongfully prevented from doing the duties of his office he may recover his salary during the time it was so prevented, where it has not been paid to anyone performing the duties of the office.

2. OFFICERS, § 62*—*right to salary where another has received compensation for performing the duties of office.* Where any one else has been paid for performing the duties of an officer during the absence of the incumbent, it is the prevailing rule that the incumbent cannot recover such salary from the municipality.

3. OFFICERS, § 62*—*right to compensation as affected by neglect of duties.* Though the conduct of an officer may be such as to render him liable to removal, if the statute makes no deductions for absence or neglect of duty and the State takes no steps as to the consequence of such absence or delinquency, it is the legal right of the officer to demand the full salary allowed by law.

4. OFFICERS, § 68*—*when mandamus will not lie to compel payment of unaccrued salary.* Where a petition, praying for a writ of mandamus directing the city counsel to vote the payment of salary to a commissioner for certain months alleged to be due at the filing of the petition and also the issue of warrants for the monthly instalments of a salary in the future while he should hold office, went to judgment upon demurrer to answer and pleas and the court could not from them judicially know that the petitioner had any right to be paid or had not been paid for the months subsequent to the filing of the petition, the judgment could only be

*See **Illinois Notes Digest**, **Vols. XI to XV**, and **Cumulative Quarterly**, same topic and section number.
Vol. CLXXXX 19

properly affirmed as to the months alleged to be due at the time of the filing of the petition, without prejudice to the right of the petitioner to institute suit for instalments accruing thereafter.

Appeal from the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1914. Affirmed in part and reversed in part. Opinion filed October 27, 1914.

RECTOR C. HITT, for appellants.

BROWNE & WILEY and JAMES J. CONWAY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On March 7, 1913, Daniel Dinneen filed in the Circuit Court of La Salle county a petition against Edgar F. Bradford and four others for a mandamus. The petition charged that the city of Ottawa is under the commission form of municipal government; that in 1911 petitioner was duly nominated and elected and qualified as a commissioner of said city, and Bradford in like manner became mayor, and three of the other defendants also became commissioners, and the remaining defendant became city clerk, and that the mayor and petitioner and the other three commissioners entered upon the duties of their offices, and that from that time until the filing of the petition, Bradford continued to hold and occupy the position of mayor and petioner and said other three defendants continued to hold and occupy the office of commissioner; that none of them has in any way resigned or abdicated his office or been recalled or been displaced or disqualified in any way by any court, or in any other way deprived of full participation in said office to which he was so elected, and that said mayor and said commissioners constitute the council of said city, and that no one has disputed said facts or the right of said parties to enjoy and administer said offices. The petition further alleged that when said parties were in-

ducted into said offices, the population of said city was between 10,000 and 15,000, and that under said statute the salary of each commissioner was fixed at $900 per year, payable in equal monthly instalments, and that the salary of petitioner was $75 per month and he was entitled thereto; that the manner provided for paying said salaries was that the city council by vote allow the salary of each officer each month and direct warrants issued upon the city treasurer for said amounts; that said warrants are then signed by the mayor and city clerk and delivered to the persons respectively entitled to the same, and, upon presentation to the city treasurer, they are paid; that from the time petitioner took said office down to and including September, 1912, he received such warrants for his salary each month, but that since September, 1912, no salary has been voted to him nor any warrant delivered to him for any instalment of his salary, but said council has constantly refused to vote said salary, and said mayor and clerk have constantly refused to execute and deliver warrants to him for his said salary, although repeatedly requested so to do; that said council have voted to the mayor and to the other commissioners their salaries regularly, ever since they were inducted into office. The petition further alleged that on March 3, 1913, he made demand in writing upon said council, during its regular session, to vote to petitioner said several monthly instalments of salary for the month of October, 1912, and for succeeding months to and including February, 1913, and said council by vote refused to pay any further salary to petitioner or any of said instalments of salary in arrears. The petition further alleged that the petitioner is now and has been continuously since May, 1911, the duly elected and qualified commissioner of said city and member of said council, and is entitled to said salary in monthly instalments of $75, and that there was due him when the petition was filed said instalments for October,

November and December, 1912, and January and February, 1913, amounting to $375, which said council refuses to allow to be paid. The petition prayed for a writ of mandamus directing the city council, at its next session, to vote the payment of said salary to the petitioner for said months, and to direct the mayor and city clerk to deliver warrants to petitioner therefor, and to vote and direct the issue of warrants for the monthly instalments of his salary in the future while he holds said office, and to direct the mayor and clerk to deliver to him warrants therefor while he occupies said office. A demurrer to the petition was overruled. The respondents thereupon filed an answer and a plea and an additional plea. We deem it unnecessary to set out separately the allegations of the answer and of the several pleas or the details thereof, which are very lengthy. They admitted petitioner's election, qualification and assumption of office, and also their own election, qualification and assumption of office. They alleged that petitioner had attended no meeting of the council since August 14, 1912, and that he had failed and wilfully refused to perform the duties of the office, and denied that he had been continuously a member of the council and that said instalments of salary are due him, but charged that he had abandoned his office, and that said council was without authority to vote him said salary. They stated the adoption of an ordinance, apportioning the executive and administrative powers and duties among the several departments, and set out in detail the duties pertaining to the department of streets and public improvements, and alleged that petitioner was designated commissioner of that department, and that he did not devote such time thereto as the duties thereof required and did not discharge the duties thereof and did not make the required reports pertaining to his department; that in April, 1912, the council made a new assignment of commissioners, whereby

petitioner was assigned to the department of public property, and it set out in detail the duties of that department, as prescribed by ordinance, and alleged that he had not discharged any of the duties thereof, but wilfully neglected the same, and that by reason of this wilful neglect, he abandoned his office as commissioner and is not entitled to said salary. A demurrer to said answer and pleas was sustained. Defendants elected to abide by said answer and pleas and there was judgment for petitioner, awarding a writ of peremptory mandamus for said salary for the months above specified, and also for the months of March, April, May and June, 1913, said judgment being entered on July 25, 1913. This is an appeal by the defendants from that judgment.

In *Bullis v. City of Chicago*, 235 Ill. 472, it is held that: "The salary is incident to the title to the office and not to its occupation and exercise." If this were all that is there said, that case would be decisive of one of the main questions in this case; but it is there further said:

"If appellee was wrongfully prevented from performing the duties of his office, he may recover his salary for the time during which he was so prevented, where it has not been paid to any one performing the duties of the office. His earnings or opportunities to earn during that time were immaterial."

Where any one else has been paid for performing the duties of the office during the absence of the incumbent, it is the prevailing rule that the incumbent cannot recover such salary from the municipality. The prevailing doctrine, and the contrary doctrine, and the cases supporting each, are shown in *State v. Milne* [36 Neb. 301], 19 L. R. A. 689; *El Paso Co. Com'rs v. Rhode,* [41 Colo. 258], 16 L. R. A. (N. S.) 794; *Stearns v. Sims* [24 Okla. 623], 24 L. R. A. (N. S.) 475; and in the notes to said cases. This doctrine is recognized in *Kreitz v. Behrensmeyer,* 149 Ill. 496.

It is not averred in the answer or pleas that the city has paid any one else for performing the duties of the office held by petitioner. But there is no claim that he was wrongfully prevented from performing those duties during the five months referred to in the petition. At first blush, it seems unjust that the city should be required to pay petitioner for services which he never rendered. The Supreme Court of Iowa, in *Bryan v. Cattell*, 15 Iowa 538, was confronted with a similar situation and experienced the same difficulty. It, however, there said:

"It must be remembered, however, that we are dealing with a practical and not an abstract question. And practically the difficulty in the view suggested is, that it would be impossible to tell where the true line should be drawn,—that is to say, how long an absence from official duties—how great delinquency—shall work a forfeiture of salary. In the absence of statute, shall it be one day, or one week, or one month, or one year? Where shall faithfulness end and delinquency begin? Add to these considerations the fact that it is frequently impossible to tell to what extent the services of officers were necessary, at the time covered by the supposed delinquency, and the propriety of the rule, which entitles the officer to his salary so long as he remains in office, becomes reasonably manifest. The better and safer rule doubtless is, that if he is in point of law actually in office, he has a legal right to the salary pertaining to it. His conduct may be such as to render him liable to removal, but when the statute makes no deduction for absence or neglect of duty, and the State takes no step as a consequence of such absence or delinquency, we suppose it is the legal right of the officer to demand the full salary allowed him by law."

Speaking on this subject, Mechem on Public Officers, sec. 855, says:

"The relation between an officer and the public is not the creature of contract, nor is the office itself a contract. * * * It exists, if it exists at all, as the creation of law, and, when it so exists, it belongs to him 'not by force of any contract, but because the law attaches it to the office.' The most that can be said is that there is a contract to pay him such compensation as may from time to time be by law attached to the office."

To the same effect is Throop on Public Officers, sec. 500: "The right of an officer to his fees, emoluments or salary, is such only as is prescribed by statute; and, while he holds the office, such right is in no way impaired by his occasional or protracted absence from his post, or neglect of his duties. Such derelictions find their corrections in the power of removal, impeachment, and punishment provided by law. The compensations for official services are not fixed upon any mere principle of a *quantum meruit* but upon the judgment and consideration of the legislature as a just medium for the services which the officer may be called upon to perform. These may in some cases be extravagant for the specific services, while in others they may furnish a remuneration which is wholly inadequate. The time and occasion may, from change of circumstances, render the service onerous and oppressive, and the legislature may also increase the duties to any extent it chooses; yet nothing additional to the statutory reward can be claimed by the officer. He accepts the office 'for better or worse' and whether oppressed with constant and overburdening cares, or enabled, from absence of claims upon his services, to devote his time to his own pursuits, his fees, salary, or statutory compensation constitutes what he can claim therefor and is yet to be accorded although he performs no substantial service, or neglects his duties. * * * The fees or salary of office are '*quicquid honorarium,*' and accrue from mere possession of the office."

In 28 Cyc. 451, note 70, cases are cited holding that no deductions may be made from a mayor's salary because of his personal private absences, and that the right of an officer to his salary is not impaired by protracted absence from his post or neglect of his duties. It no doubt is a fact that many times the holder of such an office performs little of the actual work, but that that is done by subordinates. The pleadings in the case do not show why petitioner failed to act during the five months in question. If he had been absent for that length of time on a protracted vacation, or in search of health, his right to the salary would be undoubted. So it would be, if he had been confined to his home by a serious illness which unfitted him for performing the duties of his office. The law affords a remedy against an officer who wilfully refuses to perform the duties of his office. Moreover, the act for the commission form of municipal government provides how the electors who are dissatisfied with a commissioner may recall him. We are of opinion that under the authorities above cited and under the case stated in the pleadings, this salary was attached to the office and did not depend upon the fidelity with which its duties were discharged. It is true that section 30 of the statute in question (J. & A. ¶ 1589) provides that where such a city has a population of over 20,000, the mayor and the commissioners shall devote at least six hours daily to the performance of their official duties, but we are of opinion not only that this does not apply to a city of under 20,000 population, but also that the council could not deduct anything from the salary of a commissioner if they were of opinion he had devoted a less time than that required to his official duties. It was held in *City of Earlville v. Radley,* 237 Ill. 242, that a city council has no power to fine an alderman for his neglect of official duty in failing to attend a council meeting. The same section 30 of the Act provides that the salary fixed by the

council shall be the total and only compensation of the mayor and the commissioners for the performance of their respective duties, but this is only to prevent any effort to obtain extra allowances for the performance of unusual duties. The same section requires the mayor and commissioners to devote such time to the duties of their respective offices as a faithful discharge thereof may require, but that is only expressly stating what the law always implies as a requirement from every public officer. The law has not given the council the power to determine what is a faithful performance of his duties by any one of its members, nor make such deductions from his salary as in their judgment would remedy the evils of official nonaction.

It is, however, urged that the petitioner had abandoned his office, and reliance is had upon *People v. Hanifan,* 6 Ill. App. 158; *Harrison v. People,* 36 Ill. App. 319; and *People v. Spencer,* 101 Ill. App. 61.

These were not suits to collect salaries, but proceedings to determine which of two men claiming an office were entitled thereto; and the conduct there set out, under the circumstances of these particular cases, was held to have justified the proper body in filling the offices in which the original incumbents failed to act. The circumstances were held to show an intention by the original incumbents to abandon the office. Here, petitioner appeared and demanded his pay. He was originally installed in the office, he acted for much more than a year, and the only thing relied upon as an abandonment is that he has not performed the duties of his office after a certain date. Section 11 of the Act in question (J. & A. 1570) provides that if any vacancy occurs in the office of mayor or commissioner, the remaining members of the council shall, within thirty days after such vacancy occurs, appoint a person to fill such vacancy. It is not alleged in the answer or pleas that the council made any effort to appoint a person to the place held by petitioner, and it is to be

assumed against the pleader that the council did not take any such step, and it is a fair presumption therefrom that it did not suppose that any vacancy existed or that the petitioner had abandoned his office.

The judgment awarded a mandamus, commanding the defendants to take the steps to pay petitioner not only for the five months stated in the petition, and which had expired before the petition was filed, but also for the following months of March, April, May and June, 1913. If issues of fact had been made and tried and evidence had been heard, showing that petitioner had not been paid for the months intervening between the commencement of the suit and the trial of the cause, a question might then have been presented whether the jury or the court could include in the verdict or finding and judgment pay for such intervening months. But this cause went to judgment upon a demurrer to answer and pleas, and the court could not from them judicially know that petitioner had any right to be paid or had not been paid for the months of March, April, May and June, 1913.

The judgment is therefore affirmed so far as relates to the months of October, November and December, 1912, and January and February, 1913, and is reversed as to the months of March, April, May and June, 1913, at the costs of the petitioner, appellee here, but without prejudice to the right of the petitioner to bring another suit for instalments accruing after February, 1913.

*Affirmed in part and reversed in part.*