Dear Senator Rice:
This office has received your request for an Official Opinion of the Attorney General in which you ask the following questions:
 1. May a person perform official duties of a state agency with compensation paid by a private person or entity?
 2. If the answer to Question 1 is "yes," is the state agency responsible for the acts and omissions of such a person?
 3. If the answer to Question No. 1 is "yes," is such a person an "employee" for purposes of the Governmental Tort Claims Act?
 4. If the answer to Question No. 1 is "yes," may such a person command state employees of the agency as subordinates?
 5. If the answer to Question No. 4 is "yes," may such a person utilize state property and, if so, under what limitations?
 6. If the answer to Question No. 1 is "yes," is such a person covered for workers' compensation benefits by the state agency?
 7. If the answer to Question No. 1 is "yes," is such a person entitled to any benefit to which a state employee performing similar functions would be entitled (e.g., health benefits, retirement benefits, longevity benefits)?
 8. If the answer to Question No. 1 is "yes," are the acts and omissions of such a person covered by the sovereign immunity of the State of Oklahoma for purposes of the Eleventh Amendment to the Constitution of the United States? *Page 2 
 9. If the answer to Question No. 1 is "yes," is such a person subject to the same controls and accountability as an employee of the agency whose compensation is paid by the agency?
 10. If the answer to Question No. 1 is "yes," how is such a gift accepted by the State of Oklahoma?
You first ask whether someone may perform official duties of the State when he or she is paid by a private person or entity.[1] The answer to the question may be found by first examining the categories of persons who may lawfully perform official duties of the State, and then determining the permissible sources of compensation for those categories of persons.
 ONLY THOSE AUTHORIZED BY LAW MAY PERFORM OFFICIAL DUTIES OF THE STATE
In order to perform official duties of the State, one must be authorized by law to do so. Oklahoma law recognizes two categories of such persons: (1) officers who are either elected or appointed, [2] and (2) employees.
The first category of persons authorized to perform official state duties, officers, comprises two types: de jure officers and de facto officers. A de jure officer is "one who is legally appointed andqualified to exercise the duties of the office." Cox v.Dawson, 911 P.2d 272, 284 (Okla. 1996); (Opala, J., dissenting). Thus, in the absence of both the requisite qualificationsand a legal appointment, i.e., an appointment by the person or body authorized by law to make such an' appointment, a person cannot be a de jure officer. *Page 3 
Even if not a de jure officer, a person may nonetheless lawfully perform official state duties, so long as they are a de facto officer. A de facto officer is one who possesses an office or position under color of title. In Hatfield v. Jimerson,365 P.2d 980 (Okla. 1961), the Oklahoma Supreme Court described de facto officers as follows:
 An `officer de facto' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the * * * functions of the office are exercised by one who was in the actual possession of it under color of title.
 . . .
 The result of the authorities is that title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked.
Id. at 982[3] (quoting State ex rel. Tayrien v.Doggett, 296 P.2d 185, 186 (Okla. Crim. App. 1956)). The de facto officer's doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." Nguyen v. United States,539 U.S. 69, 78 (2003) (quoting Ryder v. United States,515 U.S. 177, 180 (1995)). The purpose of the doctrine is to "protect the public from the chaos and uncertainty that would ensue if actions taken by individuals apparently occupying government offices could later be invalidated by exposing defects in the officials' titles." Vroman v. City of Soldotna,111 P.3d 343, 347 (Alaska 2005). In order to constitute a de facto officer, "there must be some facts, circumstances, or conditions which would reasonably lead persons who have relations or business with the office to recognize him as the lawful incumbent, and submit to or invoke his official action, without inquiry as to his title."Steams v. Sims, 104 P. 44,46 (Okla. 1909) (citation omitted).
A person who is not a de jure officer and who lacks the requisite color of title to make them a de facto officer will be considered by Oklahoma law to be a usurper whose acts are void.
 Color of title to an office is defined to be that which in appearance is title, but which in reality has no title. It is this color of title, or, it has been said, color of authority, which distinguishes the de facto officer from a mere intruder or usurper, whose acts are absolutely void.
Steams, 104 P. at 46 (citation omitted). *Page 4 
As a result, in order to be a de facto officer, one must act under color of title and under such facts as would lead members of the public to believe that the individual legitimately exercises the powers of the office.
The de facto officer/usurper distinction is perhaps best illustrated by way of example. For instance, Oklahoma law requires district attorneys to appoint a first assistant district attorney and file such designation of office with the Secretary of State. After this requirement is met and the designee has filed the statutorily required oath, the first assistant district attorney may, as a de facto officer, perform the duties required by law to be performed by the district attorney during the period of time between a resignation or death of the district attorney and the appointment by the Governor of a qualified person to serve the balance of the district attorney's unexpired term. See State exrel. Dist. Attorney v. Adams, 794 P.2d 422, 422 (Okla. 1990).
Standing in stark contrast to such an instance would be a situation where a person is appointed or hired by someone lacking appointing and hiring authority over the objection of the body vested with appointing and hiring authority. Such an appointment or hiring would be an ultra vires act, devoid of the "facts, circumstances, or conditions which would reasonably lead persons who have relations or business with the office to recognize [the person] as the lawful incumbent." Steams, 104 P. at 46 (citation omitted).[4] As a result, the person would not be a de facto officer permitted by law to carry out the official duties of the State, but rather a usurper whose acts are void.[5]
The second category of persons authorized by law to perform official duties of the State is employees. State employees are distinguished from state officers in that officers exercise some portion of sovereign power while employees do not.[6] Employees are hired by the appointing authority of a given state agency. That appointing authority then has the sole discretion to determine the job duties of unclassified employees, while it shares discretion with the Office of Personnel Management when determining the job duties of classified employees. See generally
74 O.S. 2001 Supp. 2010, §§ 840-1.1 — 840-2.27 ("Oklahoma Personnel Act"). *Page 5 
In addition to persons hired by the appointing authority, Oklahoma's Governmental Tort Claims Act ("GTCA") defines "employee" as "any person who is authorized to act in behalf of a political subdivision or the State whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis." 51 O.S.Supp. 2010, § 152[51-152](7). Thus, a volunteer working without compensation might also constitute an "employee" so long as the person is lawfully authorized to act on behalf of the State.[7] For example, parents of a child at the Oklahoma School for the Deaf or the Oklahoma School for the Blind might volunteer to chaperone a group of students to a school-sponsored event. Any acts of the volunteer parents committed in the course of providing the volunteer service to the State would come within the scope of the GTCA's limits on tort liability so long as the parents' participation as volunteers were authorized by law. On the other hand, an independent contractor is not an employee, as that "term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor." Id. § 152(7)(a)(l).
In sum, only those who are authorized by law may perform the official duties of the State, and the law authorizes only officers and employees to so do. There is no basis in the law for a state officer or employee to create a third category of persons and authorize those persons to perform the official duties of the State. Again, the question is one of legal authority. For example, in Whittinghill v. Board of Commissioners,174 P. 489 (Okla. 1918), the Board of County Commissioners contracted with a private citizen to collect delinquent taxes, a duty imposed by statute upon the county treasurer and sheriff. In striking down the contract the Court held:
 The law in this jurisdiction seems to be well settled that county commissioners, however necessary a thing may seem to be, have no power, in the absence of express statutory authority, to contract with, employ, or pay a private individual to do a thing, or perform a duty, which the law imposes on a public officer.
Id. at 490.
Similarly, in Board of County Commissioners v. Ridings,227 P. 96 (Okla. 1924), the Court disallowed a contract which the Board of Commissioners in Grant County had entered into with private attorneys to perform services required by law to be performed by county attorneys. Relying on its holding inWhittinghill, the Court reasoned:
 Many decisions of this court have announced the rule to the effect that a board of county commissioners, in the absence of express legislative authority, has no power to contract with and employ another to perform duties which have by law been placed upon public officers.
Id. at 97. *Page 6 
The Court held that the actions of the commissioners in contracting with the private attorneys were ultra vires and void.Id. at 96 (syllabus).
Based on these controlling precedents, it is clear that only officers and employees may perform the official duties of the State, and that there is no mechanism by which an officer or employee could confer the power to perform such official duties on other persons where the law does not so authorize.
 OFFICERS AND EMPLOYEES MAY ONLY RECEIVE COMPENSATION AS ALLOWED BY LAW
If a person is a state officer or employee authorized by law to perform the official duties of the State, the question becomes: what are the permissible sources of income for such persons? Title 74 O.S. 2001, § 840-2.8[74-840-2.8] restricts the income of officers and employees for the performance of their official duties to compensation allowed by law. Section 840-2.8 provides:
 Every state and county officer and state and county employee:
 1. Shall support, obey, and defend the Constitution and laws of the State of Oklahoma; and
 2. Shall not knowingly receive, directly or indirectly, any money or other valuable thing for the performance or nonperformance of any act or duty pertaining to his or her office, other than the compensation allowed by law.
Id. (emphasis added).
Further, prior to performing their official duties, officers and employees must take an oath to uphold the United States and Oklahoma Constitutions and to accept only compensation as allowed by law.See OKLA. CONST, art. XV, § 1; 51 O.S. 2001 Supp. 2010, §§ 36.1, 36.2A.[8] The oaths of state *Page 7 
officers must be filed with the Secretary of State and the oaths of state employees must be filed with the personnel officer of the agency where the individual is employed. 51 O.S.Supp. 2010, § 36.3[51-36.3](A)(1), (2). No person may be compensated without having taken the oath. 51 O.S. 2001, § 36.4[51-36.4]. An officer who refuses to take the oath forfeits the office. OKLA. CONST, art. XV, § 2. An officer or employee who, in taking the oath, states as true any material matter that he or she knows to be false is guilty of a felony and forfeits the office or employment. 51 O.S. 2001, § 36.5[51-36.5].
Thus, the Oklahoma Constitution and Oklahoma Statutes unambiguously require that officers and employees be compensated only as allowed by law. The Legislature has established the manner in which state employees are paid. Title 74 O.S.Supp. 2010, § 1303[74-1303](7), defines "State Employee" in pertinent part as one who receives compensation on a warrant issued by the State. As a result, the funds used to pay an employee must come from the State Treasury. The Legislature has also provided for the accrual and payment of leave for employees (id. § 840-2.20); the calculation and payment of longevity service (id. § 840-2.18); the payment of a benefit allowance (id. § 1370); and contributions to and payment for retirement. 74 O.S. 2001, § 901[74-901]. The Legislature has not authorized other compensation for employees.
There is a mechanism by which a private entity could donate funds to the State that could then be used to pay the salary of a state employee. See 60 O.S. 2001, § 383[60-383]. Such a donation may only be accepted by the Governor unless a state agency has been granted express statutory authority to accept gifts on its own accord.Id.[9] Once accepted by the Governor, such funds are deposited into the state treasury-at which point they would be State and not private funds — and could conceivably then be paid by a warrant to a particular state employee, so long as the gift was made with a specific purpose as contemplated by60O.S.2001, § 385. Such compensation would thus be compensation authorized by law, as the private funds having been transformed into public funds are no different from the state funds contemplated by Title 74 as the source for employee compensation. Of course, any gift made with a purpose inconsistent with state law and in contravention of the public mission of the State could not be used for that purpose. So, for example, a gift made with the specific purpose of paying the salary of a person not authorized by law to receive state compensation (for example, an usurper, who is neither an officer nor employee), is a gift that should not be accepted by the State, and cannot be used for the unlawful purpose.
For instance, even were one to assume that an agency has the authority to accept a gift, it could not accept as a gift the labor of an individual compensated by a private person or entity because no law authorizes an appointing authority to engage the services of a private person paid by a private entity *Page 8 
to perform the official duties of an employment position in state government. Moreover, a person so appointed would not be subject to the safeguards the Legislature has put in place governing the conduct of officers and employees, including the oath of office prescribed at 51 O.S. 2001, § 36.2A[51-36.2A] and the rules of the Ethics Commission promulgated in the Appendix to Chapter 62 of Title 74 of the Oklahoma Statutes.[10] In other words, such a person would ostensibly perform official duties otherwise performed by an employee but outside the safeguards created by the Legislature to ensure the ethical conduct of state employees.[11] So even if an agency could accept a gift, it would not have the authority to accept a gift that results in bypassing legislative controls on the accountability of those who perform official duties of the State. Any such attempt by an agency, officer, or employee would be ultra vires and void.
As a result, the response to your first question is "No." A person cannot perform official duties of a state agency with compensation paid directly to them by a private person or entity. Because the answer to your first question is in the negative it is not necessary to answer the subsequent questions.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Only employees and officers of the State who are authorized by law to do so may perform the official duties of the State, and those who are so authorized may only be compensated as authorized by law. 74 O.S. 2001, § 840-2.8[74-840-2.8].
 2. A person hired by someone who does not have appointing or hiring authority, who is hired over the objection of the governing body that does have appointing or hiring authority, is neither an employee nor a *Page 9 de jure or de facto officer. Such a hiring is an ultra vires act. As a result of the ultra vires hiring, such a person is a usurper who lacks the authority to carry out the official duties of the State. The acts of such a person are void.
 3. Employees and officers may only be compensated as authorized by law. At present, Oklahoma law does not authorize an employee or officer to be directly compensated by a private entity or person. 74 O.S. 2001, § 840-2.8[74-840-2.8].
E. SCOTT PRUITT OKLAHOMA ATTORNEY GENERAL
GRANT E. MOAK ASSISTANT ATTORNEY GENERAL
[1] We read your question as contemplating a situation where an individual, purportedly performing official state duties, is paid by a private entity that is not under contract with the State. In other words, we understand your question as inquiring about services that are paid for by a private entity or person receiving no consideration from the State pursuant to a valid contract with the State. As a result, this Opinion does not address services performed under contract pursuant to the Oklahoma Privatization of State Functions Act ("Privatization Act") (74 O.S. 2001 Supp. 2010, §§ 586 — 590). The Privatization Act provides the procedure by which a state agency can privatize its services in a manner that is "cost effective and in the best interests of the citizens of this state." 74 O.S. 2001, § 587[74-587]. The Act defines "Privatize" at Section 588(4) as meaning "to enter into a contract for the performance of a duty or function which is currently being performed by a state employee" — a definition that both requires the State to be a party to the contract with the entity providing the services of the privately compensated individual, and assumes that the State is providing consideration to the private entity as part of the contract (i.e., the State is paying the private entity for the services of the individual).Id.
[2] See generally, Chapter 1 of Title 51 of the Oklahoma Statutes. For example 51 O.S. 2001, § 7[51-7], provides:
 It shall be unlawful for any officer elected or appointed under the laws of the state to keep the books, papers, records, or other public property used in his office, at any place other than that in which he is required by law to keep said office.
Id. (emphasis added).
[3] See also the discussion of de facto officers in Attorney General Opinion 97-9.
[4] Moreover, the person lacking appointing or hiring authority would not be able to argue that he or she is privatizing a state service as any attempt to contract for services under such circumstances would be an ultra vires act because of the lack of appointing and hiring power. Even if such an attempt at end-running the lack of appointing or hiring authority did not suffer from that fatal flaw, such a privatization would have to otherwise comply with the Privatization Act.
[5] As explained previously, because of the ultra vires nature of the appointment or hiring such a person would also not constitute a dejure officer. Additionally, such persons are not clothed with sovereign immunity under the Oklahoma Governmental Tort Claims Act, and are neither properly insurable for Workers Compensation nor eligible for other benefits available to state employees and officers.
[6] In Oklahoma City v. Century Indemnity, Co.,62 P.2d 94 (Okla. 1936), the Oklahoma Supreme Court applied the following test in determining whether someone is an officer: "(a) The specific position must be created or authorized by law; (b) there must be certain definite duties imposed by law on the [officer]; and (c) [the duties] must involve the exercise of some portion of the sovereign power." Id. at 97.
[7] Just as a person appointed or hired by way of an ultra vires act would be an usurper rather than a de facto officer, a volunteer employed by way of an ultra vires act cannot, by definition, be a state employee.
[8] The Oath for officers as found in Article XV, Section 1 of the Oklahoma Constitution states:
 I,??., do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma, and that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law; I further swear (or affirm) that I will faithfully discharge my duties as ??. to the best of my ability.
Id.
The Oath officers and employees as found in 51 O.S.Supp. 2010, § 36.2A[51-36.2A], in pertinent part states:
 I do solemnly swear (or affirm) that I will support the Constitution and the laws of the United States of America and the Constitution and the laws of the State of Oklahoma, arid that I will faithfully discharge, according to the best of my ability, the duties of my office or employment. . . .
Id.
[9] For a discussion of gifts to the State see A.G. Opinions 07-39 and 02-27.
[10] For example, 74 O.S.Supp. 2010, ch. 62, app. 257:20-1-9, provides:
 (a) Influence of official act, fraud or official duty. No state officer and no state employee shall, directly or indirectly, ask, demand, exact, solicit, seek, accept, assign, receive, or agree to receive anything of value for the state officer or employee or for any other person or entity, in return for being:
 (1) influenced in the performance of an official act;
 (2) influenced to commit, aid in committing, collude in, or allow fraud, or make an opportunity for the commission of fraud on a governmental entity; or
 (3) induced to perform or fail to perform an act in violation of the state officer's or state employee's official duty.
Id.
[11] For example, employees who are convicted of a felony are automatically suspended. 51 O.S.Supp. 2010, § 24.1[51-24.1](A). Moreover, if the felony is for "bribery, corruption, forgery or perjury or any other crime related to the duties of his or her office or employment," the employee shall vacate the position and forfeit any retirement benefits. Id. § 24.1(F), (G).